504 P.2d 1281

Richard N. BASSO, Appellant,

v.

ALLSTATE INSURANCE CO., a corpora-
tion, et al., Appellees.

No. 2 CA–CIV 1183.

Court of Appeals of Arizona,
Division 2.

Jan. 10, 1973.

Rehearing Denied Feb. 15, 1973.

Review Denied March 20, 1973.

Miller, Pitt & Feldman, P. C., by David
J. Leonard, Tucson, for appellant.

Johnson, Tucker & Jessen, P. A., by Ar-
thur M. Johnson and Kenneth L. Tucker,
Phoenix, for appellees.

HOWARD, Judge.

A declaratory judgment action was
brought by the plaintiff-appellant to deter-
mine the limit of liability insurance cover-
age afforded by Allstate Insurance Compa-
ny on behalf of its insureds, Zollie T.
James, Mrs. James, and their deceased son,
Larry, under Allstate's Crusader Automo-
bile Policy.

Cross motions for summary judgment
were filed and Allstate was granted judg-
ment with a determination that under the
facts of the automobile accident in question
its liability under the policy issued to the
defendant James was a maximum of
$10,000.

The action for declaratory judgment
arose as a result of an automobile accident
which occurred in the State of Arizona on
June 21, 1968, between a vehicle driven by
the deceased, Larry T. James, and a vehi-
cle driven by the plaintiff, Richard N. Bas-
so, and owned by the State of Arizona.

At the time of the accident, there existed one policy of insurance, Number 162029649–21, issued in the name of Zollie T. James only, insuring three different vehicles: a 1967 Ford truck, a 1965 Chevrolet, and a 1957 Chevrolet truck. Zollie James was the principal driver of the 1967 Ford truck; Mrs. James was the principal driver of the 1957 truck; and Larry T. James was the principal driver of the Chevrolet. The vehicle involved in the accident was the 1965 Chevrolet.

The renewal certificates for the three vehicles indicated that three different premium rates were paid by the insured, based upon the principal driver of the particular vehicle and the liability limit for the vehicle. The 1967 Ford truck was insured for bodily injury limits for each person of $25,000 and for each occurrence of $50,000 (25/50). The 1965 Chevrolet was insured for bodily injury liability for each person of $10,000 and for each occurrence $20,000 (10/20). The 1957 Chevrolet truck was insured for bodily injury liability for each person of $10,000 and for each occurrence $20,000 (10/20). The dispute centered around the fact that two of the coverage certificates indicated bodily injury limits of 10/20 coverage, while one of the certificates indicated 25/50 coverage.

▮ Allstate's position in support of its motion for summary judgment was that it had issued but one automobile policy insuring three separate vehicles, each with a separate limit of liability, and that its renewal certificates clearly showed that the 1965 Chevrolet was covered for only 10/20. Allstate based its authority upon cases construing a provision in the policy commonly known as the "separate application provision," which in pertinent part reads as follows:

"4. Two or more Automobiles
Parts 1, 2 and 4

When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each, . . . "

The plaintiff's opposing arguments were that Zollie James was *personally* covered for at least 25/50, irrespective of the identity of the driver or the vehicle involved in the accident; that the separate application provision provided Zollie James with 25/50 coverage under the facts of his son's accident; and that the James family was entitled to an aggregate coverage by Allstate in the amount of 45/90.

On appeal Basso has altered his position. He contends that Allstate's policy in question is irrational and ambiguous in that it does not clearly state one "limit of liability," but provides for "different limits of liability," without stating how the varying limits apply, and that where such an ambiguity exists, the policy must be construed in favor of the insured and against the insurance company in a manner which provides the greatest coverage, to wit, 25/50. Droz v. Paul Revere Life Insurance Company, 1 Ariz.App. 581, 405 P.2d 833 (1965).

Basso also contends that based on Zollie James' *respondeat superior* liability for his son's negligence under the family purpose doctrine, James' assets are protected to the limit of 25/50.

We believe that Basso's contentions are without merit. An examination of the record supports the lower court's judgment that the insurance policy which is the subject matter of the declaratory judgment action is not ambiguous and defendant Allstate's obligation to its insured for the automobile collision which occurred on June 21, 1968, is the sum of $10,000 only.

Relative to the construction of insurance policies, the Arizona Supreme Court has stated:

"The cardinal principle pertaining to the construction and interpretation of insurance contracts is that the intention of the parties should control. An insurance policy is a contract, and in an action based thereon the terms of the policy must govern. . . . where the provisions of the contract are plain and unambiguous upon their face, they must be

applied as written, and the court will not pervert or do violence to the language used, or expand it beyond its plain and ordinary meaning or add something to the contract which the parties have not put there." (Citations omitted) D.M.A. F.B. Federal Credit Union v. Employers Mutual Liability Insurance Company of Wisconsin, 96 Ariz. 399, 396 P.2d 20 (1964).

Allstate's obligation to Zollie James is clearly stated in the very beginning of the policy where it agrees:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A. bodily injury, . . . sustained by any person; . . .

arising out of the ownership, maintenance or use of the owned automobile . . ."

According to the policy an "owned automobile" means:

"(a) a private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded, . . ."

The policy also sets forth the limits of liability as follows:

"The limit of bodily injury liability stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury sustained by one person as the result of any one occurrence; the limit of such liability stated in the declarations as applicable to 'each occurrence' is, subject to the above provision respecting each person, the total limit of the company's liability for all damages arising out of bodily injury sustained by two or more persons as the result of any one occurrence."

The "declarations" consist of the original supplement page to the policy and the renewal certificates periodically sent to the insured.

The following persons are insureds under the policy:

"(a) with respect to the owned automobile,

(1) the named insured and any resident of the same household, . . ."

The provisions of Allstate's policy, read together with the renewal certificates, do not present an ambiguous contract. The renewal certificates clearly insure Zollie T. James by name as the primary insured, and by policy terms and definitions the members of his household are likewise insured. The declarations pages also list the three vehicles owned by the insured, and each declarations page indicates a different premium amount, depending upon the vehicle described on the page and the rated driver to whom the premium applies. The declarations pages also clearly show that the 1967 Ford Truck had a bodily injury liability limit of $25,000 per person and $50,000 per occurrence, while the other two owned vehicles were covered for 10/20.

The separability clause quoted above also does not create an ambiguity. This clause is the subject matter of a recent annotation entitled "Limitation of Amount of Coverage Under Automobile Liability Policy as Affected by Fact that Policy Covers More Than One Vehicle," 37 A.L.R.3d 1263 (1971). The consensus of opinion concerning the separability provision is that it does nothing more than render the policy applicable to whichever car is insured under the policy. Polland v. Allstate Insurance Company, 25 App.Div.2d 16, 266 N. Y.S.2d 286 (1966). In other words, the separability provision assures the applicability of the policy to whichever car is involved in the accident, and does no more. Pacific Indemnity Company v. Thompson, 56 Wash.2d 715, 355 P.2d 12 (1960). In the case *sub judice,* the declarations page provided that the 1965 Chevrolet was covered for 10/20 and this, therefore, is the extent of Allstate's liability to its insured for the automobile accident in question. We are not called upon to answer whether Allstate's policy would be ambiguous under various hypothetical fact situations pre-

sented by appellant which are not in issue before us.

The family purpose doctrine is not involved in the case at bench. While appellant's contention that Larry James' negligence would be imputed to the head of the household under an agency theory is correct, this would not serve to increase Allstate's liability to its insured. Zollie James' 1967 Ford truck was insured for 25/50, not Mr. James himself.

The trial court's judgment is affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.