## JUDITH JEAN OARR *v.* GOVERNMENT EMPLOYEES INSURANCE COMPANY ET AL.

[No. 783, September Term, 1977.]

*Decided March 10, 1978.*

The cause was argued before MORTON, LISS and WILNER, JJ.

*Darlene Perry,* with whom were *Edward P. Camus* and *Camus & Perry* on the brief, for appellant.

*Albert D. Brault,* with whom were *Brault, Graham, Scott & Brault* on the brief, for appellees.

WILNER, J., delivered the opinion of the Court.

Effective February 5, 1973, Government Employees Insurance Company (GEICO), appellee, renewed for a one-year period a Standard Family Automobile Policy insuring two automobiles owned by James E. Daugherty — a 1970 Ford Torino and a 1966 Chevrolet Corvair. The Ford was normally driven by Mr. Daugherty; the Chevrolet was generally used by his wife Charlene. The policy limits, with respect to liability coverage, were stated to be $20,000 per person and $40,000 per occurrence as to each of the two automobiles.

On September 3, 1973, Charlene was driving the Ford when she was involved in an accident with an automobile driven by appellant, Judith Jean Oarr. Ms. Oarr sued Mr. and Mrs. Daugherty for the injuries sustained by her as a result of that accident. The litigation was terminated by a consent judgment against Charlene for $40,000 and dismissal of the claim against James. In pursuance of that judgment, and its obligations under the insurance policy, GEICO paid $20,000 to Ms. Oarr. This case arises from a dispute over the other $20,000.

Ms. Oarr brought an action for declaratory judgment against GEICO alleging that, because of an ambiguity in the policy language, the policy limit of GEICO's liability to her

was $40,000, not $20,000, and that GEICO should be required to pay the balance of the judgment debt. GEICO, of course, believes otherwise, and was able to convince the Circuit Court for Prince George's County that its position was the correct one. From the granting of summary judgment in GEICO's favor, Ms. Oarr has appealed. She raises two issues:

(1) Whether the language of the policy was so ambiguous as to create a jury question and to cause the contract to be construed against GEICO and in favor of the insured; and

(2) Whether "stacking" of policy benefits should be allowed where the policy insures two automobiles and the insurer collects separate premiums for each.

Both issues are aimed at the same result — the "stacking" or "pyramiding" of coverage based on the fact that the policy insures two vehicles.

The second issue, as framed, may be disposed of rather quickly. We are aware of no provision of Maryland law, nor any regulation of the Insurance Commissioner, that would require a policy insuring more than one vehicle to provide for the "stacking" of liability coverage. In the absence of such a supervening requirement, therefore, the terms of the policy will control.[1] Thus, if there is to be "stacking", it will be because the policy provides for it, not because the law requires it. GEICO's obligations are derived from the policy, which is a contract to be read and construed in the same manner as other contracts.[2] To determine whether Ms. Oarr is entitled to recover the other $20,000 from GEICO, we must therefore look solely to the insurance policy to see what limit of liability has been expressed therein. Consequently, the second issue will be treated as part of the first.

The basic coverages afforded by the policy (and the limits

---

1. Reserve Ins. Co. v. Duckett, 240 Md. 591, 599 (1965); Casualty Co. v. Hinds, 180 Md. 676, 681 (1942).

2. Amer. Etc. Ins. Co. v. Fid. & Cas. Co., 159 Md. 631 (1930); Little v. First Federated Life, 267 Md. 1 (1972); Watson v. U.S.F. & G. Co., 231 Md. 266 (1963).

thereto) are shown on the Declaration sheet which, in relevant part, provides as follows: [3]

| UNIT 1 | | | COVERAGES |
|---|---|---|---|
| Limits of Liability | | Premium | |
| Each Person $20,000 | Each Occurrence $40,000 | $36.30 | Bodily Injury A-Lia-bility |

| UNIT 2 | | | COVERAGES |
|---|---|---|---|
| Limits of Liability | | Premium | |
| Each Person $20,000 | Each Occurrence $40,000 | $32.80 | Bodily Injury A-Lia-bility |

In Part I of the policy, entitled "Liability", the company obligates itself "[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury', sustained by any person ... arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile. ..."

The policy includes as "persons insured" under Part I, with respect to the "owned automobile", the named insured and any resident of the same household." A "named insured" is defined as "the individual named in the declarations and also includes his spouse, if a resident of the same household." With respect to these provisions, it is conceded that the Ford Torino is an "owned automobile" and both James and Charlene Daugherty are "persons insured".

---

3. Unit 1 is the Ford Torino, the car involved in the accident; Unit 2 is the Chevrolet.

The alleged ambiguity arises from the next two provisions. Under the heading "Limits of Liability", this language appears:

> "*Regardless of the number of automobiles or trailers to which this policy applies,* the limit of bodily injury liability stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury sustained by one person as the result of any one occurrence. . . ." (Emphasis supplied.)

This would seemingly make clear that the limit of liability stated in the declarations with respect to the Ford — $20,000 each person — is the total extent of GEICO's obligation. Later in the policy, however, are stated a number of "CONDITIONS", one of which, Condition 4, provides, in relevant part, that, "When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each."

The point sought to be made by appellant is essentially as follows:

(1) Condition 4 states that "the terms of this policy shall apply separately to each" of the two automobiles insured under the policy;

(2) Thus, the limits of liability expressed in the declarations ($20,000 each person) apply separately to each of the two automobiles, to the same effect as if the vehicles were insured under separate policies;

(3) Mrs. Daugherty is an insured person with respect to both automobiles;

(4) Therefore, by virtue of Condition 4, appellant is entitled to collect $20,000 under Charlene's insurance with respect to the Ford and $20,000 under Charlene's insurance with respect to the Chevrolet.

Without pausing at this point to comment upon the substance of this proffered syllogism, we note that it rests entirely upon an assumed effect of Condition 4, without recognizing in any way the language contained in the "Limits

of Liability" section of the policy. It is well-settled, however, that courts are not at liberty to ignore a clear provision in an insurance policy in order to avoid what is professed or may appear to be a hardship; [4] indeed, the intention of the parties must be garnered from all of the terms of the policy considered as a whole, and not from the various clauses considered separately.[5] We therefore must assess appellant's argument, not solely upon the basis of Condition 4, but in the light of what is said in the "Limits of Liability" section.

Appellant recognizes this, but seeks to protect her position by asserting that, to the extent the language found under "Limits of Liability" would produce a contrary result, an ambiguity is created which should be construed against the insurer and in her favor. To the extent (but only to the extent) that the policy is ambiguous, that would be the required construction; [6] and so the threshold issue is whether the two provisions, read together, in fact make the policy ambiguous.

This appears to be a case of first impression in the Maryland courts. There are, however, dozens of decisions of the Federal courts and the courts of other States from which a rather well established pattern has emerged. It is a pattern decidedly antagonistic to appellant's contention.

The development of the decisional law in this area arose initially and primarily in the context of "medical payments" coverage, involving an undertaking by the insurance company to reimburse its insured for the cost of medical services incurred as the result of bodily injuries sustained by the insured or certain members of his family. The earliest case appears to be *Sullivan v. Royal Exchange Assurance,* 181 C.A.2d 644, 5 Cal. Rptr. 878 (1960), in which the California District Court of Appeal interpreted a policy insuring two vehicles to preclude the "stacking" of medical payments coverage. In essence, the court concluded that Condition 4 and the "limit of liability" clause were complementary rather

4. Little v. First Federated Life, *supra.*

5. Laurel Race Course v. Regal Constr., 274 Md. 142 (1975).

6. Ebert v. Millers Fire Ins. Co., 220 Md. 602 (1959); *cf.* C & H Plumbing v. Employers Mut., 264 Md. 510 (1972).

than contradictory, that there was therefore no ambiguity, and that the "specific limitation provision" governed.

The approach taken by the California court in *Sullivan, with respect to medical payment coverage,* has not been followed in subsequent cases throughout the country.[7] Rather, the nearly universal rule is that, in a single Family Automobile Policy of the type issued in this case, in which more than one vehicle is insured, the inclusion of the "limit of liability" clause and Condition 4 suffices to create an ambiguity with respect to medical payment coverage, and that, as a result, the policy will be construed to permit a "stacking" of benefits under that coverage. Not all of the courts adopting this approach have explained the rationale behind their decision in exactly the same way; but, in most instances, the result seems to have been reached upon the theory that:

(1) Medical payment coverage extends to bodily injuries sustained from the operation or involvement of *any* automobile, and is therefore not dependent upon or related to the involvement of an automobile insured under the policy;

(2) Thus, neither the coverage, nor the premiums collected for it, are really attributable to either, any, or all of the vehicles insured under a multi-vehicle policy;

(3) This type of coverage is therefore more like a personal accident policy than automobile insurance;

(4) If the insured had separate policies on his vehicles, each containing this type of coverage, he would be able to collect up to the policy limit of liability under each policy (*i.e.,* the coverage would be "stacked");

(5) Condition 4, applying the terms of the policy separately to each insured vehicle, when coupled with the charging of separate and cumulative premiums for this coverage, is

---

7. *See, for example,* Kansas City Fire & Marine Insurance Co. v. Epperson, 356 S.W.2d 613 (Ark., 1962); Southwestern Fire and Casualty Company v. Atkins, 346 S.W.2d 892 (Tex. Civ. App., 1961); Central Surety & Insurance Corporation v. Elder, 129 S.E.2d 651 (Va., 1963); Government Employees Insurance Company v. Sweet, 186 So. 2d 95 (Fla., 1966); Annotation, *Limits of Amount of Medical Insurance Coverage Under Insurance Policy Covering More Than One Vehicle,* 21 ALR3d 900. *Compare,* however, Wachovia Bank & T. Co. v. Westchester Fire Ins. Co., 172 S.E.2d 518 (N.C., 1970), in which the Supreme Court of North Carolina, against a dissent by two of its members, reversed a decision of the State Court of Appeals, and expressly declined to follow what it implicitly recognized was the majority rule.

consistent with an intent to treat *this coverage* in the same manner as if it had been afforded under separate policies; and

(6) To the extent the "limit of liability" clause is inconsistent with this approach, there is an ambiguity in the policy, which should and would be construed against the company and in favor of the insured.[8]

This type of reasoning has been applied and extended by some courts to permit the "stacking" of benefits under uninsured motorist coverage, also a "first party" coverage; [9] and it is upon this general line of cases, pertaining to first party coverages, that appellant relies in espousing her position that coverage should be "stacked" in this instance.

It is not necessary for us to determine whether we would follow this line of reasoning with respect to the "stacking" of medical payment and uninsured motorist coverages, and we expressly decline to make such a determination. That issue is not before us in this case. Suffice it to say that there is a clear and decisive distinction between those coverages, on the one hand, and the liability coverage at issue here, on the other, which makes the rationale underlying the "stacking" of the former, even if we were to adopt it, inapplicable to the latter.

We are dealing here with GEICO's undertaking:

> "'To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... bodily injury, sickness or disease, including death resulting therefrom ... sustained by any person ... arising out of the ownership, maintenance or use of the owned automobile. ...'" [10]

---

8. For a restated version of the theory, *see* Emick v. Dairyland Insurance Company, 519 F. 2d 1317 (4th Cir., 1975), at page 1323.

9. *See, for example,* Sturdy v. Allied Mutual Insurance Co., 457 P. 2d 34 (Kan., 1969); Virginia Farm Bureau Mutual Ins. Co. v. Wolfe, 183 S.E.2d 145 (Va., 1971); Blocker v. Aetna Casualty and Surety Company, 332 A. 2d 476 (Pa., 1975). Some of the courts permitting the "stacking" of uninsured motorist coverage have done so on the basis of public policy or statutory requirement. *See, for example,* Cameron Mut. Ins. Co. v. Madden, 533 S.W.2d 538 (Mo., 1976); Tucker v. Government Employees Insurance Co., 288 So. 2d 238 (Fla., 1973).

10. The policy also afforded similar protection with respect to bodily injuries arising from the ownership, maintenance, or use of a "non-owned

Unlike the medical payment and uninsured motorist coverages, this undertaking is directly related to, and requires the involvement of, one of the vehicles specifically mentioned in the policy (or a replacement or temporary substitute for it), for which a specific premium is charged. Both the coverage and the premiums charged for it are therefore attributable to those described vehicles. This coverage is automobile, rather than person, based. It is clearly insurance on the vehicle and is not in the nature of a personal accident policy. Moreover, even considering the effect of the extended coverage for "nonowned" automobiles, there would be no "stacking" of liability coverage if the two vehicles were insured under separate policies,[11] a fact which, by itself, undercuts one of the major reasons expressed for allowing the "stacking" of first party coverage under a single multi-vehicle policy.

Most of the courts permitting the "stacking" of first party coverages have recognized, either implicitly or explicitly, that the rationale used by them to support that result would not be applicable with respect to liability coverage.[12] Indeed, where the issue of "stacking" liability coverage has been considered and decided, the courts, with near uniformity, have held the first party coverage cases to be inapplicable and have found the policy to be unambiguous and to preclude "stacking".[13]

automobile". We are not concerned here with that aspect of coverage, however, since the vehicle involved in the accident was an "owned automobile"; and we therefore express no opinion with regard to it. *See,* however, Emick v. Dairyland, *supra,* 519 F. 2d 1317; Allstate Insurance Company v. Mole, 414 F. 2d 204 (5th Cir., 1969).

11. The Ford, for example, would not qualify either as an "owned" or a "nonowned" automobile under a separate policy insuring the Chevrolet. It would be an owned vehicle not stated in the policy; and thus, the liability coverage under the Chevrolet policy would not extend to it.

12. *See, in particular,* Wachovia Bank & T. Co. v. Westchester Fire Ins. Co., *supra,* 170 S.E.2d at 77, *reversed,* as noted in Footnote 7, 172 S.E.2d 518; Government Employees Insurance Company v. Sweet, *supra,* 186 So. 2d at 97.

13. *See* Rosar v. General Ins. Co. of America, 163 N.W.2d 129 (Wis., 1968); Pacific Indemnity Company v. Thompson, 355 P. 2d 12 (Wash., 1960); Emick v. Dairyland Insurance Company, *supra,* 519 F. 2d 1317; Basso v. Allstate Insurance Co., 504 P. 2d 1281 (Ariz., 1973); Greer v. Associated Indemnity Corporation, 371 F. 2d 29 (5th Cir., 1967). *Also,* Allstate Insurance Company v. Zellars, 462 S.W.2d 550 (Tex., 1970), dealing with property damage.

The earliest case reaching this result seems to be *Pacific Indemnity Company v. Thompson,* 355 P. 2d 12 (Wash., 1960), in which the Supreme Court of Washington characterized Condition 4 — the basis of the argument for stacking — as merely assuring the applicability of the policy "to whichever car is involved in an accident, or to all the cars" and nothing more. Citing the "limit of liability" clause, however, the court concluded that the "contract limits the company's liability for bodily injury or death of one person arising out of one occurrence to a maximum of ten thousand dollars, with no contribution from one coverage to another."

In *Rosar, supra,* note 13, the court agreed with this approach and concluded, at 163 N.W.2d 131:

> "We do not find an ambiguity in the condition that '[w]hen two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each.' There was one injured claimant, one owned and described vehicle involved, and one occurrence. The liability insurance purchased by the assured under these circumstances was limited to $10,000 [the amount stated in the declarations]."

The court then distinguished the medical payment cases, quoting as follows from *Government Employees Insurance Co. v. Sweet, supra,* 186 So. 2d at 96, 97:

> "The medical payments coverage applies to all medical expenses of the named insured while occupying or through being struck by an automobile, except an automobile owned by or furnished for the regular use of the named insured which is not described in the policy. This is the feature which makes medical payments insurance coverage an entirely different type of insurance than public liability or property damage insurance where coverage is attributed to the vehicle causing the damage."

Precisely the same reasoning appears in *Emick v. Dairyland Insurance Company, supra,* 519 F. 2d at 1325, 1326.

After noting the "floating, personal accident insurance character of medical payments and uninsured motorists coverage", the court stated:

> "By contrast, bodily injury liability coverage is linked to the ownership, maintenance or use of an owned automobile or a non-owned automobile by the insured and others to whom the coverage is extended. Its basic purpose has 'always been conceived to be the protection of the policyholder against loss resulting from legal liability caused by his operation of a motor vehicle' and, as such, 'pertain[s] fundamentally to the vehicle.' 7 J. Appelman [Insurance Law and Practice, pp. 208-209]. It is for this reason that courts have universally rejected the contention that separability clauses create an ambiguity with regard to bodily injury liability coverage where more than one automobile is listed under the policy, and one of the listed automobiles is involved in an accident."

We are inclined to follow the approach taken by the courts in *Pacific Indemnity Company, Rosar,* and *Emick,* not as much because it represents the near unanimous view of the courts that have considered it, but because it is based on sound reasoning. We agree, in particular, with the Washington court in *Pacific Indemnity Company* that Condition 4, as applied to liability coverage for an "owned automobile" is intended to do nothing more, and indeed does nothing more, than to assure the applicability of the policy to whichever car is involved in the accident.[14] It does not suffice to create an inconsistency with the "limit of liability" clause, and thereby to make the policy ambiguous; nor does it have the independent effect of "stacking" the $20,000 coverage applicable to the Chevrolet on top of the $20,000 coverage applicable to the Ford.

---

14. *See also* Polland v. Allstate Insurance Company, 266 N.Y.S.2d 286 (1966); Basso v. Allstate Insurance Co., supra, 504 P. 2d 1281; Annotation, *Limitation of Amount of Coverage Under Automobile Liability Policy As Affected By Fact That Policy Covers More Than One Vehicle,* 37 ALR3d 1263.

In this policy, unlike those at issue in most of the other cases, the insurer has made a special effort to make clear that the limit of its liability is as stated in the declarations. The "limit of liability" clause states that *regardless of the number of automobiles to which the policy applies,* the limit is as so stated. No clearer expression of intent is needed.[15]

Accordingly, we conclude that the policy is *not* ambiguous, it does *not* permit the "stacking" of liability coverage with respect to the "owned automobiles", Ms. Oarr is *not* entitled to collect more from GEICO than the $20,000 it has already paid to her, and the court below was *not* in error in granting GEICO's motion for summary judgment.

*Judgment affirmed; appellant to pay the costs.*

15. *See* Hansen v. Liberty Mutual Fire Insurance Company, 157 S.E.2d 768 (Ga. App., 1967); Hilton v. Citizens Insurance Company of New Jersey, 201 So. 2d 904 (Fla. App., 1967); Wachovia Bank & T. Co. v. Westchester Fire Ins. Co., *supra,* 172 S.E.2d 518, 525; Virginia Farm Bureau Mutual Ins. Co. v. Wolfe, *supra,* 183 S.E.2d 145, 147.