CARLTON F. DIXON ET AL. *v.* EMPIRE MUTUAL
INSURANCE COMPANY ET AL.
(10964)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued December 3, 1982—decision released March 8, 1983

*Philip R. Shiff,* for the appellant (named defendant).

*Peter A. Treffers,* with whom, on the brief, was *Benedict Moss,* for the appellees (plaintiffs).

ARTHUR H. HEALEY, J. The present case was tried and decided prior to our decision in *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 446 A.2d 1059 (1982). This appeal raises the issue of whether the trial court erred in holding that the insured plaintiffs could, under the terms and conditions of their insurance policy, "stack" uninsured motorist coverage where their insurance policy covered two automobiles. Even if we were to find that the terms of the policy prohibited the stacking of uninsured motorist coverage, we held in *Nationwide* that General Statutes § 38-175c, and the pertinent regulations promulgated thereunder, precluded any such terms and conditions from preventing the stacking of benefits. Therefore, we affirm the decision of the trial court permitting stacking.

This action arose out of a motor vehicle accident that occurred on June 19, 1975, in which the plain-

tiff, Carlton Dixon, was struck and injured by an uninsured motorist.[1] Carlton Dixon was a minor at the time of the accident, so this action was instituted by Rosa F. Dixon, the duly appointed guardian of the estate of Carlton Dixon. Carlton Dixon was "insured" under the terms and conditions of the insurance policy issued by the defendant, Empire Mutual Insurance Company (Empire Mutual), to Dematraious Dixon, the plaintiff's father. The policy covered two automobiles, a 1970 Buick and a 1971 Mercury,[2] for which the plaintiff's father paid separate premiums to provide coverage on both. The policy included a provision protecting against injuries sustained in any accident with an uninsured motorist. The premium for uninsured motorist coverage on the Buick was $2, while for the Mercury it was $1. Empire Mutual has already paid the plaintiffs $5000 for basic reparations benefits, the limit of that coverage provided under the terms of the Basic Reparations Endorsement contained in the policy.

Before the trial court, Empire Mutual contended that the absolute ceiling for uninsured motorist coverage was $20,000 for each person injured, regardless of the number of vehicles covered by the policy. The plaintiffs contended that the amount of protection was $20,000 for each vehicle and, because Dematraious Dixon had two vehicles, the total amount of coverage provided by the policy was $40,000. The trial court agreed with the plaintiffs and, accordingly, awarded them $35,000.[3]

---

[1] The underlying facts were stipulated by the parties.

[2] The policy was originally issued on December 12, 1974, but was later amended so as to add the Mercury in its coverage on May 28, 1975.

[3] This figure represents the total amount of uninsured motorist benefits, less the $5000 basic reparations benefits already paid by Empire Mutual.

The insurance policy issued by Empire Mutual is divided into four parts: Part I is entitled "Liability"; Part II is entitled "Expenses for Medical Services"; Part III is entitled "Physical Damage"; and Part IV covers "Protection Against Uninsured Motorists." Following these sections is a set of "Conditions." Condition number 4, which specifically applies only to Parts I, II and III, covers situations with "Two or More Automobiles."[4] It provides, in relevant part, as follows: "When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each . . . ."

The applicable provision in *Nationwide,* unlike the provision contained in Condition 4 of the policy issued by Empire Mutual, explicitly prohibited stacking of uninsured motorist coverage in the event that two or more cars were insured under the same policy. *Nationwide Ins. Co.* v. *Gode,* supra, 398. We held there that because the applicable regulations, § 38-175a-6[5] of the Regulations of Connecticut State Agencies, did "not expressly authorize a limitation of payment provision such as that contained in this insurance policy, the clause cannot operate to prevent the defendants [the insureds] from stacking their coverages as they

[4] Condition 4 provided in full as follows: "TWO OR MORE AUTOMOBILES—PARTS I, II, III: When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each, but an automobile and a trailer attached thereto shall be held to be one automobile as respects limits of liability under Part I of this policy, and separate automobiles under Part III of this policy, including any deductible provisions appilcable thereto."

[5] As noted in *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 400, 446 A.2d 1059 (1982), the regulations have the force of law. See also *Pecker* v. *Aetna Casualty & Surety Co.,* 171 Conn. 443, 449, 370 A.2d 1006 (1976).

have tried to do." *Nationwide Ins. Co.* v. *Gode,* supra, 400. The claimed effect of the pertinent provisions of the respective insurance policies in *Nationwide* and in this case, i.e., no stacking, is the same. Our analysis in *Nationwide* applies here and need not be repeated. Therefore, regardless of whether Empire Mutual's claimed interpretation of Condition 4 is correct, it cannot act to prohibit the plaintiffs from stacking the uninsured motorist coverage provided by the policy.

Furthermore, in the present case, coverage for the 1971 Mercury was added to the policy over five months *after* the policy was issued on the 1970 Buick. It was separately listed in the policy, and a separate premium was paid by Dematraious Dixon. In such circumstances, we have noted that it is particularly appropriate to presume that such a policy entitled the insured to stack uninsured motorist coverage. See *Safeco Ins. Co.* v. *Vetre,* 174 Conn. 329, 334–35, 387 A.2d 539 (1978), and cases cited therein; see also *Nationwide Ins. Co.* v. *Gode,* supra, 396, and cases cited therein; *Pecker* v. *Aetna Casualty & Surety Co.,* 171 Conn. 443, 450–51, 370 A.2d 1006 (1976).

There is no error.

In this opinion PETERS, PARSKEY and GRILLO, Js., concurred.

SHEA, J. (concurring). I disagree with the rationale followed by the majority in affirming the judgment of the trial court, but, nevertheless, reach the same result in construing the language of the policy.

The majority find it unnecessary to consider the language of the policy because they read an insur-

ance regulation; Regs., Conn. State Agencies § 38-175a-6 (d);[1] to mandate stacking of uninsured motorist coverage limits where two or more vehicles are included in the same policy, regardless of unambiguous provisions to the contrary. *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 398–400, 446 A.2d 1059 (1982). I disagree with that interpretation of the regulation for the reasons set forth in my dissenting opinion in that case. *Nationwide Ins. Co.* v. *Gode,* supra, 403–404 (*Shea, J.,* dissenting). I continue to view § 38-175a-6 (d) as requiring only that the statutory minimum for uninsured motorist coverage of $20,000 per person not be subject to reduction except in instances not pertinent to this case. I fail to comprehend the necromancy employed in parlaying this statutory minimum coverage requirement of $20,000 per person into twice that amount simply by virtue of the fact that the same coverage is extended to persons riding in a second vehicle listed in the policy. It is inconceivable that the regulation was intended to mandate

---

[1] Regs., Conn. State Agencies § 38-175a-6 (d) provides as follows: "LIMITS OF LIABILITY. The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of § 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been (1) paid by or on behalf of any person responsible for the injury, (2) paid or are payable under any workmen's compensation or disability benefits law, or (3) paid under the policy in settlement of a liability claim. The policy may also provide that any direct indemnity for medical expense paid or payable under the policy or any amount of any basic reparations benefits paid or payable under the policy will reduce the damages which the insured may recover under this coverage and any payment under these coverages shall reduce the company's obligation under the bodily injury liability coverage to the extent of the payment."

General Statutes § 14-112 (a) provides, in part, as follows: "the commissioner shall require from such person proof of financial responsibility to satisfy any claim for damages by reason of personal injury to, or the death of, any one person, twenty thousand dollars . . . ."

uninsured motorist limits in direct proportion to the number of vehicles a person is affluent enough to own and insure. The concern of the regulation is that there be no less than $20,000 of coverage for each person regardless of the number of vehicles with respect to which such coverage may apply.

In concluding that the stacking of uninsured motorist coverage limits was called for by the terms of the policy, the trial court relied upon the exclusion of such coverage from the applicability of Condition 4 of the policy. This condition provides that "[w]hen two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each," but restricts this provision to Part I (Liability), Part II (Expenses for Medical Services) and Part III (Physical Damage). Since the trial court construed this provision as intended to prevent stacking of limits with respect to Parts I, II and III of the policy, application of the maxim, inclusio unius est exclusio alterius, indicated the contrary intention with respect to Part IV (Protection against Uninsured Motorists).[2]

---

[2] The "Limits of Liability" for uninsured motorist coverage are stated in Part IV as follows:

"Limits of Liability:

"(a) The limit of liability for uninsured motorists coverage stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to 'each accident' is the total limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident.

"(b) Any amount payable under the terms of this Part because of bodily injury sustained in an accident by a person who is an insured under this Part shall be reduced by

"(1) all sums paid on account of such bodily injury by or on behalf of (i) the owner or operator of the uninsured automobile and

The court relied upon a case where the policy contained a condition identical to Condition 4, in which it was held that the omission of uninsured motorist coverage from its scope implied that intra-policy stacking of such limits was intended. *Goodman* v. *Continental Casualty Co.*, 347 A.2d 662 (Del. Super. 1975).

The defendant argues that in *Safeco Ins. Co.* v. *Vetre*, 174 Conn. 329, 333–35, 387 A.2d 539 (1978), this court relied upon language identical to that contained in Condition 4 in arriving at the conclu-

(ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under Coverage A, and

"(2) the amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law, disability benefits law or any similar law.

"(c) Any payment made under this Part to or for any insured shall be applied in reduction of the amount of damages which he may be entitled to recover from any person insured under Coverage A.

"(d) The company shall not be obligated to pay under this Coverage that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured automobile which represents expenses for medical services paid or payable under Part II."

Part IV also contains an "Other Insurance" clause as follows:

"Other Insurance: With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

sion that intra-policy stacking of limits for uninsured motorist coverage was required. Such a provision was the basis for the conclusion reached in Part II of *Safeco* that, where a single policy furnished uninsured motorist coverage in respect to more than one vehicle, the effect should be the same as if separate policies, one for each vehicle, had been issued. We had decided in Part I of *Safeco*, where two separate policies were involved, that the "other insurance" clause of one policy could not effectuate a reduction of uninsured motorist limits available under another policy, because § 38-175a-6 (d) of the regulations made such a clause inoperative for uninsured motorist coverage. It followed, therefore, that the conclusion reached in Part I, that stacking of such limits was called for where separate policies were involved, should also apply in Part II, where two vehicles were insured under a single policy which contained a separability clause like that of Condition 4.

Such a clause would not produce the same result with respect to coverage for liability, physical damage or medical expenses, because there is no regulation like § 38-175a-6 (d) which can be deemed to make the "other insurance" clause inapplicable to those coverages. The separate policy clause would militate against any contention that the reduction of liability intended to be effectuated by such a clause should be restricted to "other insurance" provided by a different insurance policy. See *Goodman* v. *Continental Casualty Co.,* supra, 665–66. Contrary to the claim of the defendant that stacking is indicated by a separability clause, the substantial weight of authority holds "that a separability clause appearing in an automobile insurance policy does not act, in and of itself, to pyramid

the limits of liability established by that policy."
*Otto* v. *Allstate Ins. Co.,* 2 Ill. App. 3d 58, 63, 275
N.E.2d 766 (1971); see *Allstate Ins. Co.* v. *Mole,*
414 F.2d 204, 205 (5th Cir. 1969); *Yates* v. *Inter-
insurance Exchange of Automobile Club of South-
ern California,* 275 Cal. App. 2d 301, 305, 79 Cal.
Rptr. 604 (1969); *Oarr* v. *Government Employees
Ins. Co.,* 39 Md. App. 122, 126–29, 383 A.2d 1112
(1978); *Polland* v. *Allstate Ins. Co.,* 25 App. Div.
2d 16, 17, 266 N.Y.S.2d 286 (1966); 8A Appleman,
Insurance Law and Practice § 4891.45. The effect
of such a clause depends on its relationship to other
policy provisions. See *Allstate Ins. Co.* v. *Mole,*
supra, 205–207; *Otto* v. *Allstate Ins. Co.,* supra,
63–64; *Oarr* v. *Government Employees Ins. Co.,*
supra, 126–29.

In the policy before us it is clear that the liability
limits for each vehicle could not be stacked, because
they are stated in amounts for each person claim-
ing against the insured as well as for each occur-
rence.[3] Similarly, physical damage liability cannot

---

[3] The "Limits of Liability" and "Other Insurance" clauses of Part
I (Liability) are as follows:

"Limits of Liability: The limit of bodily injury liability stated in
the declarations as applicable to 'each person,' is the limit of the
company's liability for all damages, including damages for care and
loss of services, arising out of bodily injury sustained by one person
as the result of any one occurrence; the limit of such liability
stated in the declarations as applicable to 'each occurrence' is, sub-
ject to the above provision respecting each person, the total limit
of the company's liability for all such damages arising out of
bodily injury sustained by two or more persons as the result of any
one occurrence.

"The limit of property damage liability stated in the declarations
as applicable to 'each occurrence' is the total limit of the company's
liability for all damages arising out of injury to or destruction of
all property of one or more persons or organizations; including
the loss of use thereof, as the result of any one occurrence.

"Other Insurance: If the insured has other insurance against a
loss covered by Part I of this policy the company shall not be liable

exceed the value of the damaged vehicle described in the policy.[4] The separability clause of Condition 4, therefore, could not have been intended to achieve stacking of those coverages.[5] Indeed, its apparent purpose was to bring into play the "other insurance" clauses of Parts I, II and III of the policy by making the coverage of one vehicle "other

under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."

[4] The "Limit of Liability" and "Other Insurance" clauses for Part III (Physical Damage) are as follows:

"Limit of Liability: The limit of the company's liability for loss shall not exceed the actual cash value of the property, or if the loss is of a part thereof the actual cash value of such part, at time of loss, nor what it would then cost to repair or replace the property or such part thereof with other of like kind and quality, nor, with respect to an owned automobile described in this policy, the applicable limit of liability stated in the declarations; provided, however, the limit of the company's liability (a) for loss to personal effects arising out of any one occurrence is $100, and (b) for loss to any trailer not owned by the named insured is $500.

"Other Insurance: If the insured has other insurance against a loss covered by Part III of this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability of this policy bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."

[5] The "Limit of Liability" in Part II (Expenses for Medical Services) is defined as follows:

"Limit of Liability: The limit of liability for medical payments stated in the declarations as applicable to 'each person' is the limit of the company's liability for all expenses incurred by or on behalf of each person who sustains bodily injury as the result of any one accident."

This provision, which limits the liability of the insurer to the amount stated in the declaration for "each person," may suffer from the same infirmity as the uninsured motorist coverage limitation of liability clause which also refers to the declared amount

insurance" with respect to the other vehicle, just as if separate policies on each vehicle were in effect. The "other insurance" clauses so applied would effectively prevent stacking.

The omission of Part IV (Protection Against Uninsured Motorists) from Condition 4 implies that for such coverage the insurance upon one vehicle should not be deemed "other" with respect to the second vehicle because this coverage should be regarded as contained in a single policy and not two separate policies, unlike Parts I, II and III. Since the language of the policy makes the "other insurance" clause inoperative for uninsured motorist coverage, the situation is the same as that in *Safeco,* where the regulation, § 38-175a-6. (d), was deemed to invalidate the "other insurance" clause. Although I disagree that the regulation should be given the effect attributed to it by this court, I would follow the judicial gloss that stacking of uninsured motorist coverage is presumed in the absence of an operative "other insurance" clause or some provision unambiguously negating such a construction. See *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 403–404, 446 A.2d 1059 (1982) (*Shea, J., dissenting*). This plaintiff was entitled to infer

applicable to "each person." See 8A Appleman, Insurance Law and Practice § 4902.55.

Part II also contains an "Other Insurance" clause, which the separability policy clause presumably was intended to invoke, which provides as follows:

"Other Insurance: If there is other automobile medical payments insurance against a loss covered by Part II of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible automobile medical payments insurance; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible automobile medical payments insurance."

that the omission of uninsured motorist coverage from Condition 4 meant that a different result was intended there in respect to stacking than was intended in respect to the other coverages. Accordingly, I concur in the result reached by the majority which allows stacking of the uninsured motorist limits for each of the two vehicles described in the policy.