**Richard L. HENDRICKSON, Plaintiff/Appellant,**

and

**Cynthia Hendrickson, Plaintiff,**

and

**Frances Igo Jackson, Barbara Igo Swartz and Dorothy L. Ussery, Plaintiffs,**

v.

**Curtis Lee CUMPTON and Brady E. Hagerman, Defendants,**

and

**State Farm Mutual Automobile Insurance Company, Intervenor,**

and

**MFA Mutual Insurance Company, Intervenor,**

and

**Northwestern National Insurance Company, Garnishee-Respondent.**

No. WD33804.

Missouri Court of Appeals, Western District.

June 28, 1983.

Steven G. Emerson, Timothy W. Monsees, Morris, Larson, King, Stamper & Bold, Kansas City, for plaintiff-appellant.

James Borthwick, Penni L. Johnson, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, for garnishee-respondent.

Before LOWENSTEIN, P.J., and WASSERSTROM and MANFORD, JJ.

WASSERSTROM, Judge.

Plaintiff Richard Hendrickson obtained a judgment for $135,000 against defendant Cumpton for injuries suffered in an automobile accident, and three other victims each obtained a judgment in a lesser amount. Cumpton was insured under a policy issued by Northwestern National Casualty Company ("Northwestern") which covered five described vehicles. The trial court

held that Northwestern's liability was confined to the stated policy limit of $10,000 for any one individual and $20,000 for all injuries suffered in any one accident. Hendrickson appeals on the theory that he is entitled to stack five coverages, one for each of the vehicles listed in the Northwestern policy, so as to increase Northwestern's total coverage to $50,000 for any one individual and $100,000 for any one accident. We hold that such stacking is not permissible under this policy for the purpose of bodily injury coverage.

The facts are stipulated. On the evening of July 22, 1978, Cumpton started out driving a 1967 Pontiac Tempest automobile which was one of those listed in the Northwestern policy of insurance. That Pontiac became disabled, and Cumpton requested the use of a Ford pickup truck owned by Hagerman, to which Hagerman agreed. During the early morning hours of July 23, 1978, Cumpton drove the Hagerman truck into collision with the Hendrickson vehicle. Hagerman had no liability insurance.

Under Cumpton's Northwestern policy, here in controversy, a number of provisions are pertinent. Part I requires Northwestern "[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury . . . sustained by any person . . . arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile. . . ." The Declarations Page provides that the limits of liability for bodily injury are $10,000 for each person and $20,000 for each occurrence.

The following definitions contained in the policy are pertinent. An "owned automobile" is defined to mean "a private passenger . . . automobile described in this policy for which a specific premium charge indicates that coverage is afforded" or any temporary substitute automobile. A "temporary substitute automobile" is defined as "any automobile or trailer, not owned by the named insured, while temporarily used with the permission of the owner as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." A "non-owned automobile" is defined as "an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile."

The policy also contains a separability clause as follows: "When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each. . . ."

Northwestern concedes that it owes $20,000 under the Cumpton policy, and it has paid the four victims a total amount of $20,000, of which Hendrickson has received $9,000. Hendrickson, however, contended that he was entitled under stacking to an additional $36,000, and he filed garnishment against Northwestern to collect that additional amount. Northwestern filed answer to the effect that it had already paid the full limits of its liability. Hendrickson then filed a denial to the answer, and Northwestern filed a reply. After hearing the opposing contentions, the trial court entered judgment for Northwestern, which triggered the present appeal.[1]

The problem of stacking of insurance coverage has produced a plethora of litigation. Missouri has ruled on two aspects of the problem, namely that arising with respect to uninsured motorist coverage and with respect to medical payment coverage. In each of those situations, stacking has been approved. *Cameron Mutual Ins. Co. v. Madden,* 533 S.W.2d 538 (Mo. banc 1976).

The Missouri courts have not heretofore been called upon to determine whether stacking should also be permitted in the case of liability coverage. Courts in other jurisdictions however have uniformly denied stacking in the latter situation. *Pacif-*

1. Another aspect of this case involving the liability of another insurer for uninsured motorist coverage was decided by this court in *Hendrickson v. Cumpton,* 632 S.W.2d 512 (Mo.App. 1982).

ic Indemnity Co. v. Thompson, 56 Wash.2d 715, 355 P.2d 12 (1960); Government Employees Insurance Co. v. Lally, 327 F.2d 568 (4th Cir.1964); Cook v. Suburban Casualty Co., 54 Ill.App.2d 190, 203 N.E.2d 748 (1964); Polland v. Allstate Insurance Co., 25 A.D.2d 16, 266 N.Y.S.2d 286 (1966); Greer v. Associated Indemnity Corp., 371 F.2d 29 (5th Cir.1967); Rosar v. General Ins. Co. of America, 41 Wis.2d 95, 163 N.W.2d 129 (1969); Allstate Insurance Co. v. Mole, 414 F.2d 204 (5th Cir.1969); Allstate Insurance Co. v. Zellars, 462 S.W.2d 550 (Tex.1970); Basso v. Allstate Insurance Co., 19 Ariz. App. 58, 504 P.2d 1281 (1973); Emick v. Dairyland Insurance Co., 519 F.2d 1317 (4th Cir.1975); Maine v. Hyde, 350 So.2d 1161 (Fla.App.2d 1977); Gibbons v. Shockley, 341 So.2d 260 (Fla.App.3d 1977); Palmisano v. Horace Mann Mut. Ins. Co., 446 F.Supp. 232 (W.D.Mo.1978); Butler v. Robinette, 614 S.W.2d 944 (Ky.1981); Oarr v. Government Employee Ins. Co., 39 Md.App. 122, 383 A.2d 1112 (1978); Annot., 37 A.L.R.3d 1263 (1971).

Hendrickson admits with commendable candor that the decisions on the stacking of liability insurance are all contrary to his position, but he requests that we break step with the outstate authority as a matter of principle, and in order to harmonize with the Missouri decisions concerning stacking of uninsured motorist and medical payment coverages. His attempted analogy to the uninsured motorist situation is subject to ready disposition. The reason that the Missouri courts permit stacking of uninsured motorist coverage is that Missouri statutes require every vehicle to be covered for that risk in a stated minimum amount. As a matter of public policy, Missouri courts will not permit that minimum coverage to be whittled away by policy provisions. Cameron Mutual Ins. Co. v. Madden, supra; Galloway v. Farmers Insurance Co., Inc., 523 S.W.2d 339 (Mo.App.1975). No parallel statute makes a similar requirement with respect to liability insurance, nor does any such public policy exist with respect to liability insurance. Palmisano v. Horace Mann Mut. Ins. Co., supra; Douthet v. State Farm Mut. Auto Ins. Co., 546 S.W.2d 156 (Mo. banc 1977); Butler v. Robinette, supra.

Apparently recognizing the above difference of uninsured motorist coverage, Hendrickson touches only lightly on that, and stresses instead a claim of analogy to the medical payment coverage cases. The medical payment situation does not in fact offer any true analogy. Medical payment coverage in an automobile insurance policy is simply a form of health insurance. Just as death calls for payment of all life insurance policies on the life of a decedent, so also all health policies and likewise medical payment policies must be paid upon the happening of the insured contingency. The substantial difference between medical payment coverage and liability coverage was recognized by the Missouri Supreme Court in the Cameron Mutual case, where it quoted from Government Employees Insurance Co. v. Sweet, 186 So.2d 95 (Fla.App. 4th 1966) as follows:

"The medical payments coverage applies to all medical expenses of the named insured while occupying or through being struck by an automobile, except an automobile owned by or furnished for the regular use of the named insured which is not described in the policy. This is the feature which makes medical payments insurance coverage an entirely different type of insurance than public liability or property damage insurance where coverage is attributed to the vehicle causing the damage. Medical payment provisions are closely akin to a personal accident policy; recovery is completely independent of liability on the part of the insured." (Emphasis by the Missouri Supreme Court in the Cameron Mutual opinion).

Alternatively to the argument just considered, Hendrickson argues that the Northwestern policy is ambiguous by reason of the separability clause. He points out that in the Cameron Mutual case, in discussing the stacking of medical payment coverage, the Missouri Supreme Court commented that the policy provision limiting liability and the separability provision operated in

combination to create an ambiguity. Hendrickson argues that the same ambiguity must be recognized here, and that under familiar principles that ambiguity should be resolved against Northwestern.

█ The trouble with Hendrickson's argument is that the observation by the Missouri Supreme Court to which he calls attention was made with reference to medical payment coverage, which is not transportable to the very different problem of stacking liability coverage. As in any case of interpreting and applying prior decisions, each decision must be read in the light of the particular facts and problem which was under consideration. In *Cameron Mutual*, the ultimate question being considered was an ascertainment of the intention of the parties in the light of the particular type of coverage there involved, namely medical payment. In arriving at the intention of the parties, the court relied on a number of factors, including the peculiar nature of medical payment coverage. This is made particularly clear by the following portion of the *Cameron Mutual* opinion:

> "The result we reach is in harmony with the nature of medical payment insurance coverage. Such coverage does not depend upon and is not based upon negligence or a finding thereof. Instead, it represents a contractual obligation to pay medical expenses incurred following injuries under specific conditions. As the court recognized in *Dyer v. Nationwide Mutual Insurance Co.*, 276 So.2d 6 (Fla. 1973), it has the character of accident insurance attached to the person of the insured and is independent of the automobile causing the damage. . . ."

Although the policy in *Cameron Mutual* was deemed ambiguous for the purpose of being applied to medical payment coverage, no similar ambiguity is perceived when the issue of liability coverage is in question. This precise point was considered and so ruled in *Emick v. Dairyland Insurance Co., supra,* where the court was considering the question of stacking liability coverage. The court recognized that there were prior decisions finding standard automobile policies

ambiguous with respect to medical payment coverage. *Emick* distinguished those cases upon the basis of the considerable difference between medical payment coverage and liability coverage. The first major difference pointed out by the *Emick* decision lies in the fact that a separate premium is charged on each car in a multi-car policy for the medical payment coverage, whereas no separate charge is made for each car in such a policy for the non-owned automobile coverage. A second and even more weighty reason given by the court was the difference in the very nature of the two coverages. In this connection *Emick* points out that medical payment coverage (as well as uninsured motorist coverage) focus on the person of the insured, rather than on his liability arising out of the operation of a particular vehicle. This "floating, personal accident insurance character of medical payments and uninsured motorist coverage" has led courts to ignore the fact that these coverages have been engrafted onto liability policies insuring particular cars. *Emick* then goes on to say:

> "By contrast, bodily injury liability coverage is linked to the ownership, maintenance or use of an owned automobile or a non-owned automobile by the insured and others to whom the coverage is extended . . . It is for this reason that courts have universally rejected the contention that separability clauses create an ambiguity with regard to bodily injury liability coverage where more than one automobile is listed under the policy, and one of the listed automobiles is involved in an accident. . . .

The extension of this reasoning to non-owned vehicle bodily injury liability coverage follows naturally as long as there is no misapprehension as to the nature of the coverage. Obviously, any one insured can operate but one automobile at a time. Bodily injury liability coverage, with its attendant limits of liability, is therefore designed to attach to whichever automobile an insured happens to be driving, whether that automobile is one of several automobiles listed under the policy or

whether it is a non-owned automobile. In the latter case, the non-owned automobile merely substitutes for, or stands in the place of, one of the named insured's owned and listed automobiles, and the bodily injury liability package, with its per person and per occurrence limits, attaches to this non-owned automobile for as long as the insured is potentially subject to liability arising out of its maintenance or use."

The arguments offered by Hendrickson for reversal are unpersuasive. The judgment of the trial court denying stacking in this case is therefore affirmed.

All concur.