MARY VEAL, ADMINISTRATRIX (ESTATE OF
JAMIE VEAL), ET AL. *v.* AETNA CASUALTY
AND SURETY COMPANY

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE NO. 65837
NEW LONDON

Memorandum filed November 23, 1983

*Shasha & Ward,* for the plaintiff.

*Brown, Jacobson, Jewett & Laudone,* for the defendant.

TAMBORRA, J. Upon a stipulation entered into by the parties this matter was tried to the court upon the sole issue of whether the limits of uninsured motorist coverage specified in the policy of insurance can be aggregated or "stacked" and, if so, for a determination by the court of the number of vehicles insured under the provisions of the policy.

Both parties concede that there were at least five vehicles insured under the policy on June 29, 1979, when the plaintiff's decedent, Jamie Veal, was fatally injured in a two car accident while operating a 1970 Volkswagen owned by her father, Joseph Veal. The accident and resulting death of Jamie was caused solely by the negligence of the operator of the other motor

vehicle, which was uninsured. At the time of the accident an amended automobile policy of insurance issued by the defendant was in full force and effect providing, among other coverages, uninsured motorist coverage with limits of $20,000 per person and $40,000 per accident for five motor vehicles insured thereunder. The five vehicles which were covered under this policy were the 1970 Volkswagen, which was being operated by Jamie at the time of her death, a 1967 Willys pickup, a 1966 Mack tractor, a 1972 Jeep pickup and a 1974 Cadillac two door hardtop. A separate premium for uninsured motorist coverage was charged and paid for by Joseph Veal for each of those five vehicles. Three of the five vehicles were covered when the policy was renewed on September 2, 1979. Those were the 1967 Willys, the 1972 Jeep and the 1974 Cadillac for which uninsured motorist insurance premiums of $5, $3 and $5 respectively were charged and paid to Aetna by Joseph Veal. The 1970 Volkswagen was added to the policy by endorsement effective November 8, 1978, for which a separate uninsured motorist insurance premium of $4 was charged by and paid to Aetna. The 1966 Mack tractor was added to the policy in substitution of a 1974 Chevrolet by endorsement effective April 12, 1979. On this latter transaction Aetna charged an additional premium of $21 for bodily injury liability coverage and an additional premium of $36 for property damage liability coverage but it credited to Joseph Veal, the named insured, a total of $57 on other types of insurance coverage. As to the uninsured motorist coverage on the 1974 Chevrolet, for which Joseph Veal was charged $5 on September 2, 1979, when the policy was renewed, there was no change made by Aetna, with the result that the uninsured motorist coverage, originally on the 1974 Chevrolet, was transferred to the 1966 Mack tractor.

The plaintiff offered evidence that Joseph Veal requested the Holmes Agency, through which he pur-

chased his insurance, to cover a 1973 Ford dump truck and he testified that he was told that the 1973 Ford dump truck was also covered. Upon reviewing the testimony and examining the documentary evidence, the court is unable to conclude that the 1973 Ford dump truck was insured with uninsured motorist coverage on the date of the fatal accident. It was the plaintiff's burden to establish this fact by a preponderance of the evidence, but the plaintiff has not met this burden. The court does find, on the basis of the stipulation of the parties and the testimony and documentary evidence, that on June 29, 1979, there were five vehicles insured under the policy in question, that they were each covered with uninsured motorist insurance with limits of $20,000 per person and $40,000 per accident and that for each of those five vehicles there was a separate premium charged by Aetna and paid by Joseph Veal.

The court will now consider the issue of whether or not the uninsured motorist coverage on those five vehicles can be "stacked" with the result that there was in effect $100,000 of uninsured motorist coverage available for the decedent's losses. There is no question that the evidence establishes that the decedent was an insured under the uninsured motorist coverage. The uncontroverted evidence showed that she was the daughter of the named insured, Joseph Veal, and that she was a resident of his household on the date of the accident in question. The policy provided that "the named insured and any designated insured and while residents of the same household, the spouse and relatives of either," was an insured under the uninsured motorist insurance.

The defendant's main argument for not allowing the stacking of coverage is that the statutes and regulations do not mandate that uninsured motorist coverage be provided for relatives of the named insured who are resident in his household but rather mandate only

that such coverage be provided for the named insured and persons using the motor vehicle with his permission.[1] Such being the case, it is argued by the defendant that the decedent is a mandated insured only in connection with the insured vehicle which she was using with the named insured's permission and that, as to the other four vehicles, she was not a mandated insured; the defendant could therefore by the language and terms of its policy limit uninsured motorist coverage as to her to the $20,000 limit stated in the declarations.

The short answer to this argument is that the uninsured motorist statute does not by its provisions purport to limit its coverage only to persons who under the statutes and regulations are "mandated" insureds. The uninsured motorist statute (§ 38-175c) requires that every automobile liability policy shall provide uninsured motorist coverage with minimal limits *"for the protection of persons insured thereunder."* (Emphasis added.)

In this case there is no question that the decedent was an insured under this policy. She was an insured because she was operating with permission of the named insured. Furthermore, she was an insured under the insurance policy by virtue of being a relative of the named insured residing in his household.

Section 38-175a-6 of the Regulations of Connecticut State Agencies provides that the insurer shall undertake to pay on behalf of the *insured* all sums which the *insured* shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the *insured* caused by an accident involving the uninsured motor vehicle.

---

[1] Section 38-175a-5 (d) of the Regulations of Connecticut State Agencies requires that the insurance afforded by automobile liability insurance policies shall be "for the benefit of the named insured and any other person . . . using the motor vehicle within the scope of his permission from the named insured."

The principle is established in Connecticut that if one who is a beneficiary under the uninsured motorist provision of multiple insurance policies suffers a compensable loss, he is entitled to payment of his loss from any or all of the insurance carriers within the limits of liability stated in their respective policies and where insurance coverage afforded on different vehicles is combined in one instead of two or more policies the rule should be no different. *Safeco Ins. Co.* v. *Vetre,* 174 Conn. 329, 334, 387 A.2d 539 (1978). This is particularly true when each of the insured vehicles is separately described, the coverage granted under the policy is separately listed for each vehicle and a separate premium is charged for the coverage afforded to each of the described vehicles. Id. Stacking of coverage was allowed in *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 446 A.2d 1059 (1982), as well as in *Dixon* v. *Empire Mutual Ins. Co.,* 189 Conn. 449, 456 A.2d 335 (1983), to allow for recovery by an injured party who in neither case was the named insured. In the *Gode* case the injured party was not a "mandated" insured but rather a passenger in an underinsured vehicle of a third party and recovery was allowed under the provisions of his father's uninsured motorist coverage on two motor vehicles resulting in recovery up to the total of the limits on each motor vehicle. In the *Dixon* case it would appear that the injured party was a pedestrian who was injured by an uninsured motorist, and stacking of the uninsured motorist coverage on the two vehicles owned by his father ($20,000 limit on each) was permitted with the result that the amount of coverage provided by the policy was $40,000.

In *Curran* v. *Fireman's Fund Ins. Co.,* 393 F. Sup. 712 (D. Alaska 1975), the court permitted the stacking of the uninsured motorist coverage on seven vehicles insured under one policy which as to each vehicle provided coverage of $15,000 for each person and

$30,000 for each accident. It is interesting to note that the relevant provisions of the uninsured motorist coverage in the *Curran* case are almost identical to the provisions in the present case and in spite of this there was no suggestion that the language of the policy by its terms prohibited stacking. Since there was no discussion in the *Curran* case that applicable statutes or regulations prohibited stacking it is assumed that stacking could have been avoided by appropriate language in the policy.

In this case the court does not find that the insurance policy prohibits stacking by its own terms. Even if it did, under authority of *Pecker* v. *Aetna Casualty & Surety Co.,* 171 Conn. 443, 370 A.2d 1006 (1976), the uninsured motorist coverage may be limited or reduced only as permitted by the Regulations of Connecticut State Agencies § 38-175a-6 (d).

For the reason above stated, judgment may enter for the plaintiff in the amount of $80,000.[2]

[2] The sum of $20,000 had already been paid.