**Donna MILLER, Appellant,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY,**
Appellee.

No. 94–CA–1657–MR.

Court of Appeals of Kentucky.

Nov. 3, 1995.

Brian L. Schuette, Bowling Green, for appellant.

Armer H. Mahan, Jr., Gene F. Zipperle, Jr., Louisville, for appellee.

Before COMBS, GARDNER and GUDGEL, JJ.

COMBS, Judge.

Donna Miller appeals an order of the Logan Circuit Court requiring her to submit to an independent medical examination by a physician designated by her basic reparations benefits obligor. After careful consideration of the issues, we reverse.

On January 9, 1994, Miller was involved in an automobile accident in Logan County, Kentucky. Her vehicle was apparently rear-ended by another automobile while Miller was stopped at a red light. Neither vehicle was damaged nor was a police report filed.

Miller claimed that she had been injured by the accident and sought medical treatment for a cervical strain. She submitted to Appellee, United States Fidelity & Guaranty Company (USF & G), medical bills amounting to approximately $2,500.00. Pursuant to KRS 304.39–020, the submitted medical bills were presumed reasonable. USF & G contested the necessity of the treatments and refused to pay the bills. Instead, it scheduled Miller for an independent medical examination. Miller declined to attend the appointment, arguing that pursuant to Kentucky's Motor Vehicle Reparations Act (MVRA), a court order was first required.

On May 3, 1994, USF & G petitioned the Logan Circuit Court for an order requiring its insured to undergo an independent medical examination. In its petition, USF & G maintained that it was entitled to the order on two grounds. First, it pointed to its policy endorsement which provided as follows:

Conditions.

    c. Medical reports; proof of claim. As soon as practicable, the 'eligible injured person' or someone on his behalf shall give to the Company written proof of claim, under oath if required, including full particulars of the nature and extent of the 'bodily injury', treatment and rehabilitation received and contemplated,

and other such information as may assist the Company in determining the amount due and payable. *The 'eligible injured person' shall submit to physical and mental examination by physicians selected by the Company when and as often as the Company may reasonably require.* (Emphasis added).

Second, it argued that the order was appropriately entered under the "good cause" standard for such examinations as set out in the MVRA. KRS 304.39–270 provides as follows:

> If the mental or physical condition of a person is material to a claim for past or future basic or added reparation benefits, the reparation obligor may petition the circuit court for an order directing the person to submit to a mental or physical examination by a physician. Upon notice . . ., the court may make the order *for good cause shown.* (Emphasis added).

On June 10, 1994, the circuit court entered its order requiring Miller to submit to the independent medical examination proposed by USF & G. The order concluded that good cause had been shown pursuant to KRS 304.39–270; that the provisions of the policy issued by USF & G entitled the company to the independent examination; that the policy provision did not conflict with the terms of the MVRA; that the policy provision did not contravene public policy; and that the request of the company for the independent examination was not unreasonable. This timely appeal followed.

Miller contends that the circuit court abused its discretion by ordering her to submit to the independent medical examination. She argues that the trial court erred both in determining that USF & G had shown "good cause" for the independent medical examination and by enforcing the company's policy terms as they effectively circumvented the provisions of the MVRA. We agree with both assertions.

■ We begin our analysis with a discussion of the "good cause" standard for requir-

ing independent examinations as provided under the MVRA. As the parties have noted, there is an absence of guiding precedent as to what constitutes a demonstration of "good cause" as that term is used in Kentucky's MVRA. Indeed, it has been only within recent months that an appellate court has even considered the provisions of KRS 304.39–270(1). *See, Grant v. State Farm Mut. Auto. Ins. Co.,* Ky.App., 896 S.W.2d 24, 26 (1995).

In *Grant,* a three-member panel of this Court reversed and remanded the circuit court's order requiring the insured to submit to an independent medical examination. We criticized the petition of the reparations benefits obligor as failing to adequately explain why an independent examination was necessary and noted that the record failed to reflect sufficient findings of fact for an adequate review. We wrote as follows:

> Although the (reparation obligor's) petition is verified, it says nothing of substance.
>
> \*      \*      \*      \*      \*      \*
>
> For our review, KRS 304.39–270(1) requires that the basis support the "good cause shown." The circuit court may not enter an order for an examination without rhyme or reason, thereby entitling a reparation obligor to an examination simply upon demand.

We added that absent explicit findings, "[w]e cannot presume that the statute has been complied with by the circuit court."

In this case, the factual scenario is strikingly similar to that in *Grant.* As in *Grant,* the court order at issue here is devoid of specific findings of fact as to how USF & G had shown "good cause" for an independent evaluation. Appellant contends that the circuit court's finding of "good cause" was entered *solely* on the basis of an affidavit submitted by a USF & G claims adjustor—in the clear derogation of the *Grant* holding that specific findings *must* support an order for an independent examination.[1]

Other than *Grant, supra,* Kentucky has little or no case law interpreting and apply-

---

**1.** Our review of the record indicates that only this affidavit and a copy of the policy were sub-

mitted to the trial court for review.

ing the "good cause" standard of the independent examination provision of our MVRA. However, Pennsylvania, which has enacted a similar provision as a part of its no-fault act, has a well-developed body of law to which we turn for direction. Sitting *en banc*, in *State Farm Ins. Co. v. Swantner*, 406 Pa.Super. 235, 594 A.2d 316 (1991), the Pennsylvania court provided an extensive analysis of case law that had interpreted the "good cause" standard of its independent examination provision.[2]

In that case, the obligor also questioned the necessity of the treatment rendered to its insured, who claimed that she had sustained a cervical strain in a car accident. As in the instant case, the company requested that its insured submit to an independent medical examination. The court determined that indeed the insurer had met its burden of showing "good cause" for the independent examination by documenting and demonstrating *more than a mere suspicion* that its insured's treatments were unnecessary or unreasonable. First, State Farm had submitted the insured's medical reports to peer review evaluation, which had indicated that the treatments were excessive—if not unnecessary. The company then informed the insured of the results of the peer review's evaluation and requested in writing that the insured's treating physician supplement his medical reports in an effort to address some of the company's specific concerns. The court concluded that entry of the order requiring the independent evaluation was not an abuse of discretion because the company's prior contacts and inquiries made it "evident that all reasonable non-intrusive means had been pursued to establish the justification or lack of it for continued payment." *Id.* at 246.

■ The Pennsylvania court declined to enumerate specific factors to be considered when determining whether "good cause" has been shown by an insurer. Instead, it opted for a case-by-case analysis, with emphasis on the ability of an insurer to demonstrate affir-

mative proof that "good cause" exists for an independent evaluation to be conducted. We believe that this is a reasonable approach and hereby adopt it as our own.

■ Applying this analysis to the facts before us, we conclude that USF & G failed to make the requisite showing of "good cause." We hold the order of the circuit court to constitute an abuse of discretion as it was entered without an adequate showing of "good cause" on the part of the insurer. Only the affidavit of Mike Watts, a USF & G claims representative, was submitted to show that "good cause" existed for an independent evaluation. In his affidavit, Watts noted that Miller had been diagnosed with a whiplash injury and had been receiving physical therapy for over four months. He continued:

> This affiant has determined that a medical examination of an independent nature is necessary for the proper adjustment of this claim in that the extent and nature of the injuries being claimed by Ms. Miller, and the nature of the treatment which she is receiving seems far disproportionate to the type of impact that was involved in this accident.

We are unpersuaded that these general averments alone by an employee of the insurer rather than an independent medical professional are sufficient to constitute "good cause." In fact, these remarks amount to little more than boilerplate. The medical reports submitted by Miller were apparently never reviewed by an independent health care provider; the credentials of Miller's treating physician were not questioned; the treating physician was never requested to provide further documentation or to answer any specific concerns; no explanation regarding how another examination could be expected to satisfy the company's misgivings was provided; and finally, no specific reasons supporting the company's doubts about the necessity for treatment were provided. While we are not suggesting that USF & G needed to make a showing as to each and

---

**2.** Similar to the language of our statute, 75 Pa. C.S. § 1796(a) provides as follows:

Whenever the mental or physical condition of a person is material to any claim for medical, income loss or catastrophic loss benefits, a court of competent jurisdiction ... may order the person to submit to a mental or physical examination by a physician. The order may only be made upon motion for good cause shown.

every one of these factors, it is significant that *not one* of these less intrusive measures was used to determine the validity or extent of the insured's injuries. As we have noted, the insurer is not entitled to an independent medical examination upon demand. *Grant, supra.* To the extent that the circuit court's order for an independent evaluation is based upon the unsupported and vague impressions of USF & G as outlined in the affidavit, it must be reversed.

■ USF & G contends, however, that the order was not entered on the basis of KRS 304.39–270(1) alone. It argues that completely aside from the statutory provisions, Miller was required to submit to an independent medical examination pursuant to the provisions of the insurance policy. It maintains that its policy provision is not in conflict with the provisions of the MVRA and that the circuit court so concluded. Miller, however, argues that the policy provision imposes upon a basic reparation insured a requirement much broader than any that the legislature saw fit to impose when it enacted the MVRA. She argues that if it is enforced, the USF & G policy provision will work to circumvent the "good cause" provision of the MVRA. We agree.

We have determined that USF & G failed to meet the "good cause" standard of KRS 304.39–270(1). Were we to conclude that it was nevertheless entitled to the independent medical examination by virtue of its policy provision, we would, in effect, impermissibly delegate (indeed, abdicate) to USF & G the legislature's role in enacting protective legislation. In enacting the MVRA, the legislature clearly struck a balance, taking into account the needs and expectations of both the insured and the obligor. *See,* KRS 304.39–010. As the Kentucky Supreme Court has noted, "[t]he primary purpose of the MVRA is to benefit motor vehicle accident victims by reforming, and in some areas broadening, their ability to make and collect claims." *Crenshaw v. Weinberg,* Ky., 805 S.W.2d 129 (1991). The statute clearly sets forth the standard by which an insured can be forced to undergo independent medical examination and creates a statutory presumption of reasonableness of medical bills as submitted. Public policy underlying that statute dictates that USF & G may not enforce an overreaching policy provision requiring an independent medical examination "when and as often as the company may reasonably require" in clear derogation of the statutory language.

USF & G has offered case law from several jurisdictions in support of its position that the policy is indeed valid. First, it cites us to *Fleming v. CNA Ins. Co.,* 597 A.2d 1206 (1991), another Pennsylvania decision. There the appellate court affirmed a trial court order compelling a claimant to submit to an independent medical examination not on the basis of "good cause" having been shown, but instead upon the basis that the insurer's policy provision required it. We do not consider the holding of *Fleming* persuasive. In concluding its analysis of whether the obligor's policy provision could be enforced, the appellate court specifically noted that the claimants "did not challenge this policy provision as being void as against public policy or void as unconscionable...." *Id.* at 1208. In this case, we have been confronted with that very issue and have decided, in light of the purposes of our MVRA, that the policy provision simply may not be enforced as being clearly violative of the public policy underlying our statute.

Based upon the foregoing, the judgement of the Logan Circuit Court is reversed.

All concur.