Katina STEVENSON, By and Through her Legal Guardian and Father, Barry Stevenson, Appellant/Cross, Appellee,

v.

ANTHEM CASUALTY INSURANCE GROUP; and The Insurance Company of Decatur, Appellees/Cross, Appellants.

Nos. 97–SC–609–DG, 97–SC–771–DG.

Supreme Court of Kentucky.

June 17, 1999.

Rehearing Denied May 18, 2000.

Norman R. Lemme, Patrick B. McClure, Lemme & Conway, Shepherdsville, for Katina Stevenson.

David Domene, Blackburn, Hundley & Domene, LLP, Louisville, for Anthem Casualty Insurance Group and the Insurance Company of Decatur.

COOPER, Justice.

Katina Stevenson was injured in a single-vehicle accident while riding as a passenger in a 1994 Ford Ranger pickup truck owned by Sherman and Willie Faye Walker and operated at the time of the accident by Willie Faye's grandson, Joseph Campbell. The vehicle was insured by an

automobile insurance policy issued by Anthem Casualty Insurance Group/The Insurance Company of Decatur ("Anthem/Decatur"). The policy insured four separate vehicles owned by the Walkers, including the 1994 Ford Ranger. Each vehicle was insured with bodily injury liability coverage of $100,000 per person/$300,000 per accident and "personal injury protection" coverage of $30,000. Separate premiums were paid for each item of coverage per vehicle. Anthem/Decatur paid Stevenson $100,000 under the liability coverage and $10,000 under the personal injury protection coverage. Stevenson brought this declaratory judgment action in the Bullitt Circuit Court pursuant to KRS chapter 418, asserting that the coverages for all four vehicles should be "stacked" and that she should receive the full $30,000 of personal injury protection benefits, thereby increasing her potential recovery to $400,000 under the liability coverage and $120,000 under the personal injury protection coverage of the policy.

The Bullitt Circuit Court concluded that Stevenson had been paid the maximum to which she was entitled under the policy. The Court of Appeals agreed that none of the policy coverages could be stacked, but held that Stevenson could recover up to $50,000 under the personal injury protection coverage of the policy. We granted discretionary review.

## I. LIABILITY COVERAGE.

■ The section of Anthem/Decatur's policy pertaining to liability coverage contained a standard anti-stacking provision, *viz:*

> The limit of liability shown in the Declarations for "each person" for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one auto accident.
> . . .
> This is the most we will pay regardless of the number of insureds, claims made,

vehicles or premiums shown in the Declarations or vehicles involved in the auto accident.

In *Butler v. Robinette,* Ky., 614 S.W.2d 944 (1981), we upheld the validity of a similar provision prohibiting stacking of liability coverages. We had previously permitted stacking of uninsured motorist (UM) coverages contained in separate policies, *Meridian Mutual Ins. Co. v. Siddons,* Ky., 451 S.W.2d 831 (1970), because the UM statute, KRS 304.682 (now KRS 304.20–020), required each policy of automobile liability insurance to provide minimum limits UM coverage for "the protection of persons insured thereunder." Thus, the injured person could claim the UM coverage in any policy in which that person was a named insured. *Id.* at 834. Later, in *Ohio Casualty Ins. Co. v. Stanfield,* Ky., 581 S.W.2d 555 (1979), we extended the concept of stacking to UM coverages applicable to multiple vehicles insured by one policy, where the claimant was a named insured and had paid separate premiums for the separate coverages. *Id.* at 559. In *Butler v. Robinette, supra,* we declined to extend stacking to liability coverages, because the liability insurance statute, KRS 187.490(2)(b), did not require that each *policy* provide minimum limits coverage for each insured person, but rather that such coverage be provided for each *vehicle. Id.* at 947. Thus, the only liability coverage available was that applicable to the vehicle involved in the accident.

Stevenson argues that *Butler* should be revisited and overruled, because the liability insurance statute interpreted in that case, KRS 187.490, was subsequently repealed. 1978 Ky. Acts, ch. 434, § 9. However, the applicable language of the present statute, KRS 304.39–110, is virtually identical to that of KRS 187.490. The previous statute mandated minimum liability coverage "for damages arising out of the ownership, maintenance or use *of such motor vehicle ....*" KRS 187.490(2)(b) (emphasis added). The present statute

mandates minimum liability coverage "for all damages ... arising out of the ownership, maintenance, use, loading, or unloading, *of the secured vehicle ....*" KRS 304.39–110(1) (emphasis added). Under both statutes, minimum liability coverage is mandated for the insured *vehicle.*

Nor has there been any trend away from the general rule represented by our opinion in *Butler.* The overwhelming majority of jurisdictions which have addressed the issue prohibit stacking of liability coverages, whether the claim is made with respect to owned vehicle coverage, either in the context of multiple vehicles insured by the same policy[1] or in the context of multiple policies insuring separate vehicles,[2] or whether the claim is made with respect to nonowned vehicle coverage.[3] *See generally* 7A Am.Jur.2d *Automobile Insurance* § 427 (1997); C.C. Bjorklund, Annotation, *Limitation of Amount of Coverage Under Automobile Liability Policy As Affected By Fact That Policy Covers More Than One Vehicle,* 37 A.L.R.3d 1263 (1971 & Supp.1998). There have been several isolated exceptions, none of which are persuasive or of any precedential value. One trial court in New York permitted stacking of liability coverages solely because they were contained in separate policies. *Goodman v. Allstate Ins. Co.,* 137 Misc.2d 963, 523 N.Y.S.2d 391 (N.Y.Sup.Ct.1987). However, an appellate court in the same state denied stacking where, as here, the coverages were for multiple vehicles insured by the same policy. *Polland v. Allstate Ins. Co.,* 25 A.D.2d 16, 266 N.Y.S.2d 286 (N.Y.App.Div.1966). In *Schult v. Rural Mut. Ins. Co.,* 195 Wis.2d 231, 536 N.W.2d 135 (1995), an intermediate appellate court in Wisconsin interpreted a local statute,[4] which prohibited an "other insurance clause" in a policy of insurance from reducing the aggregate recovery when two or more policies cover the same loss, as requiring stacking of liability coverages contained in separate policies. However, in *Agnew v. American Family Mut. Ins. Co.,* 150 Wis.2d 341, 441 N.W.2d 222 (1989), Wisconsin's highest court held that the same statute does not apply to liability coverage and that the policy language of the standard nonowned vehicle clause specifically prohibited stacking of liability coverages applicable to owned vehicles. Of course, Kentucky does not have an anti-stacking statute of any type.

There has been no erosion of the principle enunciated in *Butler v. Robinette, supra,* and no basis exists for departure from its sound reasoning. The Bullitt Circuit Court and the Court of Appeals correctly held that the liability coverages of the four vehicles described in the Anthem/Decatur policy at issue in this case cannot be stacked.

## II. BASIC REPARATION BENEFITS COVERAGE.

■ Stevenson finds significance in the fact that the coverage referred to in KRS

1. *E.g., Basso v. Allstate Ins. Co.,* 19 Ariz.App. 58, 504 P.2d 1281 (1973); *Maine v. Hyde,* 350 So.2d 1161 (Fla.Dist.Ct.App.1977); *Oarr v. Government Employees Ins. Co.,* 39 Md.App. 122, 383 A.2d 1112 (1978); *Auto Club Ins. Assoc. v. Lanyon,* 142 Mich.App. 108, 369 N.W.2d 269 (1985); *Hilden v. Iowa Nat'l Mut. Ins. Co.,* 365 N.W.2d 765 (Minn.1985); *Mazzocchio v. Pohlman,* 861 S.W.2d 208 (Mo.Ct. App.1993); *Polland v. Allstate Ins. Co.,* 25 A.D.2d 16, 266 N.Y.S.2d 286 (N.Y.App.Div. 1966); *Ruppe v. Auto–Owners Ins. Co.,* 329 S.C. 402, 496 S.E.2d 631 (1998); *Pacific Indemnity Co. v. Thompson,* 56 Wash.2d 715, 355 P.2d 12 (1960); *Payne v. Weston,* 195 W.Va. 502, 466 S.E.2d 161 (1995).

2. *E.g., Gibbons v. Shockley,* 341 So.2d 260 (Fla.Dist.Ct.App.1977); *Georgia Farm Bureau Mut. Ins. Co. v. Shook,* 215 Ga.App. 66, 449 S.E.2d 658 (1994); *Agnew v. American Family Mut. Ins. Co.,* 150 Wis.2d 341, 441 N.W.2d 222, (1989).

3. *E.g., Emick v. Dairyland Ins. Co.,* 519 F.2d 1317 (4th Cir.1975); *Allstate Ins. Co. v. Mole,* 414 F.2d 204 (5th Cir.1969); *American Standard Ins. Co. v. Ekeroth,* 791 P.2d 1220 (Colo. Ct.App.1990); *Rando v. California State Auto. Ass'n,* 100 Nev. 310, 684 P.2d 501 (1984); *Allstate Ins. Co. v. Zellars,* 462 S.W.2d 550 (Tex.1970).

4. Wis.Stat. § 631.43(1).

304.39–020(2) as "basic reparation benefits" (BRB) coverage is denominated in Part IIA of Anthem/Decatur's policy as "personal injury protection" coverage. Although the correct terminology is, of course, "basic reparation benefits," that terminology has been used interchangeably with "personal injury protection" (PIP) benefits when describing what are generically known as "no fault" benefits under Kentucky law. E.*g.*, *Lafferty v. United States,* 880 F.Supp. 1121, 1128 (E.D.Ky.1995); *Ohio Casualty Ins. Co. v. Ruschell,* Ky., 834 S.W.2d 166 (1992); *Ohio Casualty Ins. Co. v. Atherton,* Ky., 656 S.W.2d 724, 725 (1983); *Shelter Mut. Ins. Co. v. McCarthy,* Ky.App., 896 S.W.2d 17 (1995); *Shelter Ins. Co. v. Humana Health Plans, Inc.,* Ky.App., 882 S.W.2d 127, 128 (1994); *Stone v. Montgomery,* Ky.App., 618 S.W.2d 595, 597 (1981). Of course, the motive for this argument is that if the personal injury protection coverage in the Anthem/Decatur policy is something other than BRB coverage, Stevenson might be able to avoid the statutory conditions and limitations applicable to BRB's and added reparation benefits (ARB's).

Every owner of a motor vehicle registered or operated in Kentucky is required to provide BRB coverage for that vehicle. KRS 304.39–080(5). Examination of the provisions of Part IIA of Anthem/Decatur's policy reveals that it provides the BRB coverage defined in KRS 304.39–020(2) and (5). In fact, the policy specifically states that payment under Part IIA is "in accordance with Kentucky Revised Statutes Chapter 304, Sub Title 39." Thus, we have no difficulty concluding that, despite the misnomer, the personal injury protection coverage described in the Anthem/Decatur policy is, in fact, basic reparation benefits coverage.

■ Since KRS 304.39–020(2) provides that "[t]he maximum amount of basic reparation benefits payable for all economic loss resulting from injury to any one (1) person as the result of one (1) accident shall be ten thousand dollars ($10,000)," the Bullitt Circuit Court and the Court of Appeals correctly concluded that this coverage cannot be stacked. *Cf. Capital Enterprise Ins. Co. v. Kentucky Farm Bureau Mut. Ins. Co.,* Ky.App., 804 S.W.2d 377 (1991). For the same reason, we conclude that the additional $20,000 in personal injury protection coverage described on the declarations page of the policy is, in fact, added reparation benefits as described in KRS 304.39–130.

## III. ADDED REPARATION BENEFITS.

■ Added reparation benefits (ARB's) are described in a separate endorsement to the policy entitled "Additional Personal Injury Protection Coverage—Kentucky." The endorsement limits application of this coverage to "an eligible injured person who is [a] named insured or [a] relative." Stevenson is neither a named insured of the policy nor a relative, thus is excluded from coverage. KRS 304.39–140(2) permits an insurer "to incorporate in added reparation benefits coverage such terms, conditions and exclusions as may be consistent with premiums charged." We need not address how this particular exclusion might be proved to be consistent or inconsistent "with premiums charged," for Stevenson did not challenge the exclusion on that basis at the trial level. (Logically, however, extension of coverage to persons outside the named insured's family would result in a higher premium.) Instead, she argued, as she does here, that the exclusion is void, because KRS 304.39–140(1) requires the reparation obligor (Anthem/Decatur) to provide added reparation benefits "if requested by the insured," and the coverage at issue obviously was requested by the Walkers. The Court of Appeals agreed, concluding that "ARB's are but extensions of BRB's," (Slip op., p. 6); and since Anthem/Decatur could not exclude BRB coverage for Stevenson, KRS 304 .39–030(1), KRS 304.39–080(5), KRS 304.39–100(1), neither could it exclude ARB coverage for her. Of course, that

interpretation not only ignores the fact that ARB's and BRB's are separately defined in KRS 304.39–020(1) and (2), it also would nullify KRS 304.39–140(2) insofar as that statute permits exclusions with respect to ARB coverage.

■ Our mandate is to construe a statute, if possible, so that no part of it is meaningless or ineffectual. *Hardin County Fiscal Court v. Hardin County Board of Health,* Ky.App., 899 S.W.2d 859, 861–62 (1995), citing *Brooks v. Meyers,* Ky., 279 S.W.2d 764 (1955). Permissive language in a statute "obviously exists for a reason and must be given weight under the rules of construction." *Id.,* 899 S.W.2d at 862. We recognized as early as in *Bishop v. Allstate Ins. Co.,* Ky., 623 S.W.2d 865 (1981) that BRB's and ARB's are separate and distinct coverages, and whereas BRB coverage is untouchable, ARB coverage is subject to exclusions. *Id.* at 866. The language of KRS 304.39–140(2) is the same today as it was when *Bishop* was decided.

*State Farm Mut. Ins. Co. v. Mattox,* Ky., 862 S.W.2d 325 (1993) does not require a different result. In that case, the claimant was a named insured of the policy, *i.e.,* an insured of the first class, against whom certain policy conditions and exclusions are unenforceable. *Ohio Casualty Ins. Co. v. Stanfield, supra,* at 559. Stevenson, however, is an insured of the second class, *i.e.,* one who did not pay for the coverage and had no reasonable expectation of collecting it. *Id.* at 557–59. Since Stevenson is not entitled to any ARB's, much less stacked ARB's, we need not address the creative reasoning by which the Court of Appeals concluded that there was $50,000 in combined BRB and ARB coverage available to Stevenson, even though the policy clearly limits the "personal injury protection" coverage to $30,-000.

Accordingly, the decision of the Court of Appeals is affirmed in part and reversed in part, and the judgment of the Bullitt Circuit Court is reinstated in its entirety.

All concur.