Myanh COLEMAN, Appellant,

v.

BEE LINE COURIER SERVICE,
INC., Appellee.

No. 2007–SC–000628–DG.

Supreme Court of Kentucky.

May 21, 2009.

Kevin Crosby Burke, Louisville, KY, Grover Simpson Cox, Mussler & Associates, Louisville, KY, Counsel for Appellant.

Jeremiah A. Byrne, Frost Brown & Todd, LLC, Louisville, KY, Counsel for Appellee.

## MEMORANDUM OPINION
## OF THE COURT

■ Myanh Coleman appeals from a Court of Appeals opinion affirming a summary judgment in favor of Appellee, Bee Line Courier Service, Inc., for indemnity of $4,737.00 in basic reparation benefits (BRB)[1] awarded after an automobile accident in which Coleman was the victim. Because the release Coleman signed to settle her personal injury claim with Bee Line was a release for settlement of her injury claim only and because she did not specifically agree to indemnify Bee Line for BRB recoupment, summary judgment against Coleman was improper. On discretionary review, we reverse the holding of the Court of Appeals on the indemnity issue and remand the case to the trial court with directions to enter summary judgment in favor of Coleman on the indemnity claim. The portion of the Court of Appeals decision affirming the dismissal of Coleman's counterclaims against Bee Line stands as the law of the case because of Coleman's failure to challenge that ruling in her motion for discretionary review.

### I. BACKGROUND.

Coleman was injured in an automobile accident by a vehicle owned by Bee Line and operated by its employee. Coleman settled her property damage claim without the aid of counsel. She hired an attorney to represent her in her personal injury claim.

Under the Motor Vehicle Reparations Act, Coleman's insurance carrier, Nationwide Insurance Company, paid $5,737.00 of her medical expenses in the form of BRB. As for the remaining medical bills, Coleman made a settlement demand of $21,000.00 to the claims adjuster for Bee Line's third-party claims administrator. Coleman received a counteroffer of $6,500.00 via fax. She accepted the counteroffer via fax. Bee Line's claims adjuster then faxed Coleman a "Release of All Claims" (Bee Line Release), which she signed and returned. The release said that Coleman agreed "to hold the released parties harmless and indemnify them from any claims asserted by third parties ... including ... all medical providers and any

---

1. The terms "basic reparation benefits" (BRB) and "personal injury protection" (PIP) benefits are used interchangeably to describe "no-fault" benefits under Kentucky law.

*Lawson v. Helton Sanitation, Inc.*, 34 S.W.3d 52, 53 n. 1 (Ky.2000); *Stevenson ex rel. Stevenson v. Anthem Cas. Ins. Group*, 15 S.W.3d 720, 723 (Ky.1999).

other insurance carriers against the proceeds of this settlement."

Nationwide ultimately sought statutory reimbursement from Zurich American Insurance, Bee Line's insurance carrier. Citing the indemnity provision of the Bee Line Release, Bee Line demanded that Coleman defend it in the arbitration proceeding with Nationwide and make payment; but Coleman refused. Through arbitration, Bee Line settled and paid Nationwide $4,737.00. Bee Line then sought indemnity from Coleman. She refused to pay, and Bee Line filed this lawsuit.

The trial court ruled that although Coleman had no statutory obligation to reimburse Nationwide for the BRB payments it made to Bee Line under the Bee Line Release, Coleman had become contractually obligated. The court granted summary judgment for Bee Line on this issue. Based primarily on its finding that the Bee Line Release made Coleman liable for payment of her own BRB, the trial court further ruled that Coleman's counterclaims were without merit. It then granted Bee Line's motion to dismiss and denied Coleman's motion to reconsider.

The Court of Appeals reviewed the release *de novo*, found it to be clear and unambiguous, and affirmed the trial court's grant of summary judgment in favor of Bee Line. It also affirmed the dismissal of Coleman's counterclaims.

## II. *ANALYSIS.*

■■■ "As a general rule, the construction and legal effect of an insurance contract is a matter of law for the court." *Bituminous Cas. Corp. v. Kenway Contracting, Inc.,* 240 S.W.3d 633, 638 (Ky. 2007). Because " 'the interpretation of a contract . . . is a question of law for the courts [it] . . . is subject to *de novo* review.' " *Abney v. Nationwide Mut. Ins.*

*Co.,* 215 S.W.3d 699, 703 (Ky.2006) (*quoting Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.* 94 S.W.3d 381, 385 (Ky.App. 2002)). So we review the effect of the Bee Line Release *de novo* under applicable law.

### A. *Existence of a Contract.*

Coleman argues that the release she signed did not include BRB as part of the contract. The claims adjuster for Bee Line faxed a settlement offer for $6,500.00. Coleman accepted, and the claims adjuster for Bee Line said he would send the check after Coleman signed a release. Coleman signed the release and returned it.

Here, the offer and acceptance were but one part of the contract; the release was the second part (full and complete terms), and the payment was the third part (consideration). *See Cantrell Supply,* 94 S.W.3d at 384. ("An agreement to settle claims is essentially a contract subject to the rules of contract interpretation. It is valid if it satisfies the requirements associated with contracts generally, *i.e.,* offer and acceptance, full and complete terms, and consideration."). The issue is not whether there was a contract, but whether the release that is part of the contract requires Coleman to indemnify Bee Line for her carrier's BRB recoupment claims.

### B. *Right of Indemnity for Basic Reparation Benefits.*

■■■ Bee Line has no right of indemnity for BRB from Coleman. Nationwide's claim is not against the "proceeds of the settlement"; it is instead for BRB recoupment, an independent and distinct method of recovery with additional requirements set out in the statute.

To settle her personal injury claim against Bee Line, Coleman signed a "Release of All Claims." This release provided:

This Indenture Witnesseth that I, Myanh Coleman, in consideration of the sum of $6,500.00, do hereby for my heirs, personal representatives and assigns, release and forever discharge Frank Huff, Bee Line Courier Service, Gallagher Bassett Services, Inc., Zurich Insurance and any other person, firm or corporation charged or chargeable with responsibility or liability, their heirs, representatives or assigns, from any and all claims, demands, damages, costs, expenses, loss of services, actions and causes of action arising from any act or occurrence up to the present time, and particularly on account of all personal injury, disability, property damages, loss or damages of any kind sustained or that I may hereafter sustain in consequence of an accident that occurred on or about the 11th day of December, 2003, at or near Louisville, KY.

... The undersigned agrees to hold the released parties harmless and indemnify them *from any claims* asserted by any third parties or lien holders, including but not limited to, all medical providers and any other insurance carriers *against the proceeds of this settlement.*

The Undersigned Agree(s), as a further consideration and inducement for this compromise settlement, that it shall apply to all unknown and unanticipated injuries and damages resulting from said accident, casualty or event, as well as to those now disclosed.

(Emphasis added.)

### 1. *Effect of General Tort Settlement and Release on Contractual BRB.*

 Generally, a tort settlement and release does not affect the payment of BRB. A tort settlement and release and contractual BRB are distinct methods of recovery. *See Ammons v. Winklepleck,* 570 S.W.2d 287, 289 (Ky.App.1978) ("[Bodily injury] liability coverage and the BRB coverage do not overlap and do not provide duplicate benefits for the same elements of loss.") (internal quotation marks omitted). Dealing with the two methods of recovery is like "dealing with apples and oranges." *Holzhauser v. West American Ins. Co.,* 772 S.W.2d 650, 651 (Ky.App.1989).

> When the insured files suit against the tortfeasor, the "trial court is required by law" to permit the no-fault insurer to "piggyback" its claim against the tortfeasor's insurer, and, as the real party in interest, it is "the only party who could give the tortfeasor and his insurer a release for elements of damages covered by basic reparation benefits."

*State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.,* 684 S.W.2d 283, 285 (Ky.App. 1985) (*quoting Grange Mut. Cas. Co. v. McDavid,* 664 S.W.2d 931 (Ky.1984)). Therefore, "[a] release as to the tort-feasor has no effect on the contractual [BRB] claim." *Holzhauser,* 772 S.W.2d at 651.

Here, the claims adjuster for Bee Line described the settlement offer as an offer to resolve Coleman's "injury claim." Because the Bee Line Release only provides for indemnification "from any claims ... against the proceeds of this settlement[,]" which was a personal injury tort settlement, it was merely a general tort release.

### 2. *The Rule in Ruschell.*

Coleman also argues that she cannot be required to indemnify Bee Line under *Ohio Casualty Ins. Co. v. Ruschell,* 834 S.W.2d 166 (Ky.1992). In *Ruschell,* the Plaintiff, Ruschell, had settled with the tortfeasor and had given a general release and indemnification/hold harmless agreement. She then attempted to collect BRB from her no-fault carrier, Ohio Casualty. The carrier denied her claim, arguing that since Ruschell had released the tortfeasor

under a general release, it had no further liability for BRB. The trial court agreed, but the Court of Appeals reversed.

This Court took review and affirmed the Court of Appeals. Pointing to the difference between contractual and tort claims, Justice Leibson wrote for the Court, "the reparations obligor is the only party who could give the tortfeasor and his insurer a release for elements of damages covered by basic reparations benefits.'" *Id.* at 168 (*quoting Stovall v. Ford,* 661 S.W.2d 467, 470 (Ky.1983)). So the general release to the tortfeasor does not address "those former elements of a tort claim now abolished by the no-fault act." *Id.* Therefore, in *Ruschell,* the plaintiff could pursue BRB from her own carrier despite her complete release of the tortfeasor.

It is important to note that in the case at hand, the parties align in a significantly different manner. Coleman's BRB carrier had paid BRB, so this case does not present the plaintiff trying to collect BRB from her own carrier as in *Ruschell.* This case presents the unanswered question in *Ruschell:* whether the BRB carrier can proceed against the tortfeasor for recoupment and the tortfeasor can then seek indemnity from the settling plaintiff.

█ This Court indicated in dicta in *Ruschell* that a plaintiff may agree to take on this indemnity for BRB recoupment as a matter of contract in order to settle a claim but only if the agreement is made explicitly and with specificity:

> We recognize that, as a contract right, in the process of striking a bargain to pay a given amount for a release of the tort claim, an alleged tortfeasor and his liability carrier may extract as an additional consideration the release or reimbursement of no-fault obligations, but certainly this should not be inferred as the intent of the parties unless the release specifically so provides.

*Id.* Although dicta, this Court correctly concluded that an intent to indemnify the tortfeasor against BRB recoupment claims should not be inferred in the absence of explicit, specific language of agreement. This is especially true in light of the distinctly different nature of BRB versus tort liability claims.

The question in *Ruschell* was whether the plaintiff's own BRB carrier could refuse to pay under a general release to a tortfeasor. This Court held that the plaintiff's own BRB carrier could not refuse to pay absent specific language agreeing to release or reimburse no-fault obligations. The Court wanted to ensure that if a plaintiff did intend to release her no-fault carrier as well, then the release must say so specifically and clearly.

This Court, also in acknowledged dicta, then commented on language in the Court of Appeals opinion that said that it "may be" that if Ruschell's BRB carrier then pursued recoupment of whatever it may pay out as BRB from the torfeasor, then Ruschell "may in turn" have to reimburse the torfeasor. *Id.* at 169.

Naturally, a plaintiff cannot contract away rights that do not belong to her and are not a part of her injury claim. So a plaintiff could not release the BRB carrier's right to recoupment. Whether a plaintiff could agree to indemnify the tortfeasor for BRB recoupment claims is another question, of course. In fact, in *Ruschell,* this Court noted

> that the automobile victim's "rights to those elements of damages covered by basic reparation benefits were *abolished* by KRS 304.39–060(2)(a)"; deducing from this that the reparations obligor is "the only party who could give the tortfeasor and his insurer a release for elements of damages covered by basic reparations benefits."

*Id.* at 168 (*quoting Stovall,* 661 S.W.2d at 470) (emphasis added).

In this case, Nationwide has paid BRB to Coleman; and Bee Line has reimbursed Nationwide an agreed-upon amount. Nationwide, as the no-fault carrier, had every right to seek such reimbursement since the claim belongs to it and the statute gives it the right to do so. But does the tortfeasor, Bee Line, then have the right to collect that amount back from Coleman, with whom it has settled, under a general release that does not specify that Coleman must indemnify the tortfeasor for BRB recoupment claims?

Under the rule in *Ruschell* requiring a specific designation in the release that BRB are released or indemnified, the answer is no. The release here is no more than a general release and does not mention no-fault benefits.[2] So the trial court and Court of Appeals erred in concluding that Coleman was contractually obligated to reimburse Bee Line for BRB recoupment payments.

## C. Dismissal of Counterclaims Issue is Not Properly Before this Court.

Coleman argued in her brief that the trial court's dismissal of her counter-

claims for Unfair Claims Settlement Practices Act violations, bad faith, and intentional infliction of emotional distress should be reversed because she lacked adequate time and opportunity to complete discovery. Bee Line responded by arguing that the counterclaims had been properly dismissed by the trial court for failure to state a claim.[3] Neither party raised the issue of whether the counterclaims were properly dismissed to this Court in a motion for discretionary review or cross-motion for discretionary review. Coleman mentioned the fact of the dismissal of the counterclaims, but did not actually request the Court to review the propriety of the dismissal in her discretionary review motion. Bee Line did not file a cross-motion for discretionary review, perhaps understandably since it prevailed on the issue before both lower courts.

We decline to address the merits of whether the Court of Appeals properly affirmed the trial court's dismissal of Coleman's counterclaims[4] because Coleman failed to request review of this issue in her motion for discretionary review. *Wells v. Commonwealth*, 206 S.W.3d 332, 335 (Ky.

2. Because we conclude that Coleman did not specifically agree to indemnify Bee Line against BRB recoupment claims and that we will not infer such an agreement in the absence of such specificity under *Ruschell*, we need not reach the question of whether a specific agreement to indemnify a tortfeasor for BRB recoupment claims would be void as contravening the purposes of the Motor Vehicle Reparations Act (MVRA). So we decline to express an opinion on this issue.

3. Although Coleman claims that Bee Line improperly raised this issue in its brief without having first filed a cross-motion for discretionary review, we note that Coleman had actually first raised the issue in her brief by arguing that the dismissal of her counterclaims should be reversed. We further note that Coleman, unlike Bee Line, was the one challenging the lower courts' actions concern-

ing the dismissal of the counterclaims, so it was incumbent on her to raise this issue in her discretionary review motion if she wished this Court to disturb the rulings of the lower courts. Regardless, it is clear that any issue regarding Coleman's counterclaims is not properly before us because neither party has asked us to review that issue in either a motion for discretionary review or a cross-motion for discretionary review.

4. Both parties argued the issue of whether the counterclaims had been properly dismissed in their briefs to the Court of Appeals. The Court of Appeals, in affirming the trial court's judgment, stated: "because of the clear language in the Release, we cannot find the trial court erred in granting Bee Line's motion to dismiss Coleman's counterclaims." (Court of Appeals opinion, p. 12).

2006) (declining to review arguments raised by appellant in brief or oral argument that were not raised in his discretionary review motion because "issues not raised in the Motion for Discretionary Review will not be addressed by this Court despite being briefed before us and addressed at oral argument."). Because Coleman failed in her motion for discretionary review in this Court to challenge the adverse ruling of the Court of Appeals on her counterclaims, this issue is not properly before us. That means that the ruling of the Court of Appeals on the counterclaims must stand as the law of this case. *See American General Home Equity, Inc. v. Kestel,* 253 S.W.3d 543, 548 (Ky.2008) ("That ruling [on the issue of applicability of a contract provision] is now the law of the case because Kestel did not file a cross-motion for discretionary review in this Court of the adverse ruling by the Court of Appeals."). Here, the Court of Appeals decided the issue of the dismissal of Coleman's counterclaims adversely to Coleman. She failed to raise the issue to this Court in her discretionary review motion. So we decline to address the merits of this issue.

## III. *CONCLUSION.*

The specific terms of the Bee Line Release refer only to "the proceeds of this settlement," which are proceeds for the injury claim alone. And Coleman did not specifically agree to indemnify Bee Line for BRB recoupment claims. So we will not infer any agreement to do so. Summary judgment against Coleman was improper. Instead, Coleman is entitled to summary judgment in her favor on Bee Line's indemnity claim. Because Coleman failed to raise the issue of whether the Court of Appeals properly affirmed the dismissal of her counterclaims in her discretionary review motion, that portion of

the judgment of the Court of Appeals stands as the law of the case.

For the foregoing reasons, we reverse the decision of the Court of Appeals to affirm the summary judgment granted to Bee Line on its indemnity claim. We remand the case to the trial court and direct the trial court to issue summary judgment in favor of Coleman on the indemnity claim. Coleman's counterclaims remain dismissed as the law of the case.

MINTON, C.J.; CUNNINGHAM, NOBLE, SCHRODER, SCOTT, and VENTERS, JJ., sitting. MINTON, C.J.; CUNNINGHAM, SCHRODER, and SCOTT, JJ., concur. NOBLE, J., concurs in result only by separate opinion in which VENTERS, J., joins.

ABRAMSON, J., not sitting.

NOBLE, Justice, concurring in result only.

I concur with the result reached by the majority, but I disagree with the view expressed in Footnote 2 that there is no need to address the public policy issue of whether a specific agreement to indemnify a tortfeasor for BRB recoupment claims is void because it contravenes the Motor Vehicle Reparations Act (MVRA). This case presents the "next question" discussed in dicta in *Ohio Casualty Insurance Company v. Ruschell,* 834 S.W.2d 166 (Ky.1992), because of the alignment of the parties in this case. The majority simply applies, and therefore tacitly approves, the "rule" (really dicta) laid out in *Ruschell,* yet that rule is built on a false foundation, violates the MVRA, and should be rejected.

In *Ruschell,* this Court had before it the question of whether a claimant's own basic reparations benefits (BRB) carrier had to pay her BRB claims after she had settled with the tortfeasor and given a general release that contained language releasing

"all other persons, firms and corporations" from any further claims relating to the automobile accident and covenanted to "indemnify and save harmless" such entities. Ruschell had outstanding BRB claims which Ohio Casualty argued had been released by the above language.

This Court correctly held that since a motor accident victim's rights to the elements of damages which were covered by BRB had been abolished by the MVRA, the victim had no further right as a tort claimant for those elements under the MVRA. On the other hand, that same victim had specifically contracted, under the MVRA, with the BRB carrier to make payment for those elements. Under that factual scenario, this Court held that a general release would not release the BRB carrier unless the release specifically said it was doing so.

However, this Court also engaged in dicta stating that as a contract right, a tortfeasor may require a victim to give a "release or reimbursement of no-fault obligations." Also noted was the language that the Court of Appeals had used in the case below that it "may be" that the tortfeasor's carrier "may in turn have a right to seek reimbursement" of any BRB benefits it might be required to pay to the BRB carrier under the MVRA, from the victim. The question of whether a victim could give such a release or whether the tortfeasor's carrier could in fact do so under the MVRA was not before the Court.

This is precisely the question that is now before the Court, because the parties in this action are indeed the tortfeasor's carrier seeking indemnification from the victim for BRB payments it was required to make to her BRB carrier under the MVRA.

Thus the question of whether an agreement, specific or not, can be demanded in a settlement between the tortfeasor and a victim is squarely before the Court and the majority does not answer it. While I arrive at the same result, I do so by answering that question.

## I. The Motor Vehicle Reparations Act

This release arose from a claim based on an automobile accident, thus it is subject to the provisions of the Motor Vehicle Reparations Act. The MVRA is remedial legislation and it must be broadly construed to effectuate its purpose. *See* KRS 304.39–010 (MVRA enacted "[t]o correct the inadequacies of the [previous] reparation system."); *Crenshaw v. Weinberg,* 805 S.W.2d 129, 131 (Ky.1991) ("The primary purpose of the MVRA is to benefit motor vehicle accident victims by reforming, and in some areas broadening, their ability to make and collect claims."); *Beacon Ins. Co. of America v. State Farm Mut. Ins. Co.,* 795 S.W.2d 62, 63 (Ky.1990) ("The MVRA is remedial legislation and thus is to be construed to accomplish its stated purposes."); *National Ins. Ass'n v. Peach,* 926 S.W.2d 859, 861 (Ky.App.1996) ("Our courts have explained that the MVRA is social legislation that must be liberally construed to accomplish those objectives."). The MVRA is the exclusive remedy for the payment of BRB and it preempts laws to the contrary. *Foster v. Kentucky Farm Bureau Mut. Ins. Co.,* 189 S.W.3d 553, 557 (Ky.2006) (The MVRA "provides an exclusive remedy where an insurance company wrongfully delays or denies payment of no-fault benefits.... The MVRA is the exclusive remedy."). KRS 304.39–060(2)(a) abolishes claims to the extent BRB are payable.[5]

5. KRS 304.39–060(2)(a) provides in part:

Tort liability with respect to accidents occurring in this Commonwealth and arising

## II. *Ruschell* and Public Policy Considerations

Unfortunately, this Court engaged in dicta in *Ruschell* speculating that a plaintiff may agree to indemnify a tortfeasor for BRB as a matter of contract in order to settle a claim, without making a policy analysis:

> We recognize that, as a contract right, in the process of striking a bargain to pay a given amount for a release of the tort claim, an alleged tortfeasor and his liability carrier may extract as an additional consideration the release or reimbursement of no-fault obligations, but certainly this should not be inferred as the intent of the parties unless the release specifically so provides.

*Id.*

Since that scenario was not before the Court, no research was done and no authority was cited. The ramifications of such a scenario were not examined. At best this language must be regarded as a passing thought.

In this case, Nationwide has paid BRB to Coleman, and Bee Line has reimbursed them an agreed-upon amount. However, analysis in this case demonstrates that there is no sound reason to infer under any circumstances that no-fault benefits are subject to a release/indemnification given by a plaintiff to a tortfeasor.

Arguably, a plaintiff could agree to obligate herself to indemnify any BRB her no-fault carrier may recoup, but why would she? She has paid premiums to her carrier to cover exactly this type of claim, as she is required to do by the MVRA. She is the beneficiary of the intent behind the MVRA which requires her own insurer to pay BRB regardless of fault in an accident.

Their contract is not only statutorily required, it is exclusive of the tortfeasor.

Under the MVRA, the tortfeasor is excused from responsibility to the victim for the amount of damages covered by BRB, most often up to $10,000. However, the MVRA does provide that the BRB carrier may seek reimbursement for the amount of BRB actually paid from the tortfeasor. After all, the party responsible for the harm should bear the cost of the harm. Added together, whatever the tortfeasor pays a victim, added to reimbursement for BRB, should equal 100% of the damages. It is fundamental that a victim is entitled to a *full* recovery from the one at fault.

It can be argued that this Court should not interfere with a victim's right to contract a settlement. We don't need to, because the legislature already has. It has required a no-fault victim and every other driver to purchase minimum insurance coverage for liability and for basic reparations. Under the MVRA drivers in Kentucky do not have freedom to contract or not as to this coverage. It is mandated. Insurance companies benefit by selling the contracts of insurance the MVRA requires. Tortfeasors benefit by having the damage they cause paid by insurance instead of paying in a lump sum themselves. Victims benefit by having no-fault payment of treatment and necessities regardless of whether they share in the fault. Holding that all beneficiaries of the Act may not take advantage contrary to the policy of the MVRA is merely applying legislative intent.

The majority's application of *Ruschell* would allow a tortfeasor to refuse to settle with a victim unless the victim gave him a specific release/indemnity clause in a set-

---

from the ownership, maintenance, or use of a motor vehicle is "abolished" for damages because of bodily injury, sickness or disease

to the extent the basic reparation benefits provided in this subtitle are payable therefor. . . .

tlement release. This view would allow this contract even though everything about it is contrary to the policy of the MVRA, which is remedial, not to be used for further victimization.

Let there be no doubt that this type of contract would lead to further victimization. The victim would end up responsible for the cost of her BRB elements of damage twice: when *she* indemnified the tortfeasor for the damage he caused her when her carrier sought reimbursement, and when she paid the premiums to her BRB carrier. The tortfeasor and BRB carrier are in a superior position as recognized by the MVRA. The victim is injured and in need of treatment and basic expenses. The protective policy behind the MVRA is so strong that the legislature has mandated payment to the victim, *even if the accident is her own fault,* "to eliminate the inequities which fault-determination has created...." KRS 304.39–010(2). That policy is clearly violated if the guilty party and a business are allowed to be the only beneficiaries of such a contract.

In a number of cases, this Court and the Court of Appeals have held that certain contractual provisions are void because they are contrary to the overall purpose of the MVRA. *See State Farm Mut. Auto. Ins. Co. v. Marley,* 151 S.W.3d 33, 35–36 (Ky.2004) (household exclusions unenforceable); *Philadelphia Indemnity Ins. Co. v. Morris,* 990 S.W.2d 621, 627 (Ky.1999) (UIM set-off provisions unenforceable); *Gordon v. Kentucky Farm Bureau Ins. Co.,* 914 S.W.2d 331, 332–33 (Ky.1995) (contractual statutes of limitations provisions unenforceable); *State Farm Mut. Auto. Ins. Co. v. Mattox,* 862 S.W.2d 325, 326 (Ky.1993) (anti-stacking provisions unenforceable); *Miller v. U.S. Fidelity & Guar. Co.,* 909 S.W.2d 339, 343 (Ky.App. 1995) (independent medical examinations under terms different than set forth under

MVRA unenforceable); *Mosley v. West American Ins. Co.,* 743 S.W.2d 854, 855 (Ky.App.1987) (intentional act exclusions unenforceable).

Under these cases the MVRA, given its broad remedial purpose, has been read as preempting contracts that would undermine its purposes. Unlike the common law of contracts, the MVRA is not a set of defaults that can be avoided by consent of both parties. In fact, no-fault benefits are more than just policy—they are a statutorily declared *right:* "every person suffering from loss from injury arising out of ... use of a motor vehicle has a *right* to basic reparations benefits...." KRS 304.39–030(1). (This right can be waived but must be done so in a statutorily prescribed manner, KRS 304.39–060(4), which does not include an indemnity agreement with a tortfeasor.)

The public policy purpose served by no-fault BRB and the MVRA in general would be thwarted if a release that meets the specific designation requirement of *Ruschell* permits a tortfeasor's insurer to seek indemnity for BRB from the victim of a car accident. No one is allowed to contract contrary to the law.

For this reason, the holding in *Ruschell* and its dicta indicating that a party in the position of Bee Line "may be" able to seek indemnification from a settling plaintiff suggest a possibility that is clearly contrary to the purpose of the MVRA and is against sound public policy. Settling tortfeasors must recognize that they are settling only the injury portion of the plaintiff's claims, and not the BRB claim. Consequently, having examined the "next case," the lack of analysis in *Ruschell* as to the policy of the MVRA requires that it be overruled, as the entire case is premised on the false notion that a victim can be required by contract to indemnify a tortfeasor in order to settle the case.

This, too, results in this case being reversed.

VENTERS, J., joins.