**Julia CAIN, Appellant,**

v.

**AMERICAN COMMERCE INSURANCE COMPANY, INC., Appellee.**

No. 2008–CA–001500–MR.

Court of Appeals of Kentucky.

Oct. 30, 2009.

As Corrected Nov. 6, 2009.

Discretionary Review Denied by Supreme Court March 16, 2011.

David C. Travis, Louisville, KY, for appellant.

David A. Calhoun, Louisville, KY, for appellee.

Before ACREE, STUMBO, and WINE, Judges.

## OPINION

STUMBO, Judge.

Julia Cain appeals from a Declaratory and Final Judgment of the Jefferson Circuit Court interpreting KRS 304.39–140 and determining that American Commerce Insurance Company, Inc. fully satisfied its obligation to pay benefits under an insurance policy it issued to Cain. After being injured in an automobile accident in which the other driver was at fault, Cain received basic reparation benefits of $10,000.00 from American Commerce plus added reparation benefits of $20,000.00 for each of her three vehicles for a total of $70,000.00. In an action initiated by American Commerce seeking a declaratory judgment, the Jefferson Circuit Court determined that American Commerce fully satisfied its obligation to Cain. Cain now argues that the court erred in failing to conclude that she was entitled to $40,000.00 in added reparation benefits per vehicle for a total of $130,000.00 ($10,000.00 in basic reparation benefits plus $120,000.00 in added reparation benefits). We agree with the reasoning of the Jefferson Circuit Court, and accordingly affirm the Declaratory and Final Judgment on appeal.

In its Declaratory Judgment rendered on November 28, 2006, which preceded the Declaratory and Final Judgment now on appeal, the trial court recited the facts underlying American Commerce's action as follows:

> Cain was injured in an automobile collision on May 12, 2003. It is undisputed that the collision was the sole fault of the opposing driver, Mohammed Al–Gazawi. The vehicle Cain was driving was insured by American Commerce. Under policy number 11–1248052 for the period April 1, 2003 through October 1, 2003 [sic]. Cain apparently made the application for automobile coverage by speaking with an agent or representative of American Commerce over the telephone on or about October 1, 2001. The policy insured three separate vehicles owned by Cain. Copies of the applicable American Commerce insurance policy documents are included in the record. According to the *Kentucky Personal Auto Application*, each vehicle was insured with bodily injury liability coverage of $100,000 each person/$300,000 each accident, Property damage coverage of $100,000 each accident, personal injury protection of $10,000 and additional personal injury protection of $20,000. A separate premium was charged for each category of coverage per vehicle, except for the additional personal injury protection, for which no premium was charged. On the line listing the additional personal injury coverage, the application shows coverage of $20,000 and the term "Aggreg Lmt".

> Another policy document, the *Kentucky Personal Injury Protection Form*, signed by Cain on October 1, 2001, indicates that Cain selected "Option 1", "Basic Personal Injury Protection with selected additional limits [x] $30,000 limit with no deductible". Yet another insurance policy document, the *Automobile Insurance Policy Description of Coverage*, indicates that Cain had "personal injury protection" limits of "$30,000 Aggregate" with no distinction between BRB and ARB.

> Following the collision, Cain filed a claim for basic reparation benefits (BRB) and added reparation benefits (ARB) from American Commerce. American Commerce paid $10,000 in

BRB and $60,000 ($20,000 per vehicle × 3 vehicles) in ARB to or on behalf of Cain. Cain argues that she is legally entitled to total reparation benefits of $130,000 ($10,000 in BRB and $120,000 in ARB).

The court went on to note that American Commerce was seeking a declaration on the legal issue of the amount of added reparation benefits to which Cain was entitled under the policy at issue. Cain asserted a counter-claim alleging that American Commerce engaged in bad faith in its handling of her claim for reparation benefits.

In examining the added reparation benefits issue, the court relied on provisions of the Kentucky Motor Vehicle Reparations Act ("MVRA"). After noting that added reparation benefits may be added together on a per-vehicle basis (a.k.a. "stacked"), the court addressed the formula set out in KRS 304.39–140(1) for determining the amount of added reparation ·benefits. It determined that Cain's policy provided for personal injury protection in the amount of "$30,000 Aggregate," which represented $10,000.00 in basic reparation benefits plus $20,000.00 in added reparation benefits. Since stacking allows the $20,000.00 added reparation benefits to be multiplied by each of Cain's three vehicles, the court concluded that Cain was entitled to $10,000.00 in basic reparation benefits plus $20,000.00 in added reparation benefits for each of the three vehicles for a total of $70,000.00. Since American Commerce had already paid to Cain the sum of $70,000.00, the court determined that its obligation under the policy had been satisfied. It further determined that because American Commerce gave Cain the opportunity to purchase up to $40,000.00 in added reparation benefits (per vehicle), and because it paid Cain's claim for benefits in a timely manner, it was entitled to a judg-

ment as a matter of law on Cain's claims under the Kentucky Unfair Claims Settlement Practice Act and common law bad faith. This appeal followed.

Cain now argues that the trial court erred in determining that she was entitled to $20,000.00 in added reparation benefits per vehicle rather than the $40,000.00 which she seeks. Resolution of her argument turns on the interpretation and application of KRS 304.39–140, which states:

(1) On and after July 1, 1975, each reparation obligor of the owner of a vehicle required to be registered in this Commonwealth shall, upon the request of a reparation insured, be required to provide added reparation benefits for economic loss in units of ten thousand dollars ($10,000) per person subject to the lesser of:

(a) Forty thousand dollars ($40,000) in added reparation benefits; or

(b) The limit of security provided for liability to any one (1) person in excess of the requirements of KRS 304.39–110(1)(a).

Pursuant to KRS 304.39–110(1)(a), the minimum security provided for liability for any one person is $25,000.00. American Commerce is a reparation obligor and Cain is a reparation insured for purposes of KRS Chapter 304.

Applying the formula to the facts, we see that Cain's liability limit (or "limit of security provided for liability to any one (1) person" in the language of KRS 304.39–140(1)(b)) is $100,000.00. Subtracting from that sum the minimum security provided for liability for any one person of $25,000.00 (set out in KRS 304.39–110(1)(a)) results in a figure of $75,000.00, which represents the "excess" described in KRS 304.39–140(1)(b). Because added reparation benefits must be sold in increments of $10,000.00, that figure is round up to $80,000.00. Thus, pursuant to KRS

304.39–140(1), American Commerce was required to offer to Cain the lesser of $40,000.00 or $80,000.00 in added reparation benefits.

This leads to the central issue, which is whether KRS 304.39–140(1) requires American Commerce to "provide" to Cain $40,000.00 in added reparation benefits as Cain contends, or merely to "offer" it to Cain as the Jefferson Circuit Court determined and as American Commerce now argues. Our resolution of this question turns on the language of KRS 304.39–140(1), which states in no uncertain terms that the reparations obligor (American Commerce) "shall ... be required to provide" the lesser of $40,000.00 or the limit of security provided for liability to any one (1) person in excess of the requirements of KRS 304.39–110(1)(a) (in this case $80,000.00) *"upon the request of a reparation insured."*

In *Nationwide Mutual Insurance Co. v. Hatfield,* 122 S.W.3d 36 (Ky.2003), Justice William Cooper discussed the parallels between uninsured/underinsured insurance and BRB/ARB insurance and described the public policy applications to each.

The "younger sibling" relationship between the UM and UIM statutes is conceptually identical to the relationship between the BRB statutes, KRS 304.39–080(5) and KRS 304.39–110(1)(c), and the added reparation benefits (ARB) statute, KRS 304.39–140, which also define coverages that are personal to the insured. While BRB coverage is mandatory, ARB coverage is optional. *Stevenson [ex rel. Stevenson v. Anthem Cas. Ins. Group,* 15 S.W.3d 720 (Ky. 1999) ], *supra,* note 6, at 722–24. As does the almost identical language in the UIM statute, the ARB statute provides that "each reparation obligor [insurer] of the owner of a vehicle required to be registered in this Commonwealth shall, upon the request of a reparation insured, be required to provide added reparation benefits." KRS 304.39–140(1). The ARB statute also authorizes "terms, conditions and exclusions." KRS 304.39–140(2). Thus, in *Stevenson, supra* note 6, we upheld a provision that did not void the ARB coverage altogether but limited it to persons who were either named insureds or relatives of a named insured. *Id.* at 724.

Like UM coverage (and liability coverage), BRB coverage is mandatory. *Bishop v. Allstate Ins. Co.,* Ky., 623 S.W.2d 865, 866 (1981). However, like ARB coverage, UIM coverage is optional. *Mullins v. Commonwealth Life Ins. Co.,* Ky., 839 S.W.2d 245, 247 (1992); *Flowers v. Wells,* Ky.App., 602 S.W.2d 179, 180 (1980). The same "public policy" considerations that pertain to mandatory coverages do not pertain to optional coverages. *Bishop, supra,* noted that whereas BRB coverage is "untouchable," ARB coverage is subject to exclusions. *Id.* at 866. *See also Stevenson, supra* note 6, at 723. And, as observed in *State Farm Mutual Automobile Insurance Co. v. Mattox,* Ky., 862 S.W.2d 325 (1993), "[w]e are unable to rationally distinguish between the statutory and contractual structure of added reparation benefits and underinsured motorists coverage." *Id.* at 326.

*Allstate Insurance Co. v. Dicke,* Ky., 862 S.W.2d 327 (1993), held that the same "public policy" that precludes application of anti-stacking provisions to UM coverages in separate policies applies as well to the application of anti-stacking provisions to UIM coverages in the same policy. *Id.* at 329. In fact, no "public policy" precludes application of anti-stacking clauses to UIM coverages even if the coverages are in separate policies. As noted *supra,* unlike the UM statute, KRS 304.39–320(2) only

mandates that UIM coverage be *made available to the insured,* not that it be *provided in every policy;* thus, if UIM coverage is provided "to the insured" in single limits in one policy, the coverage has been made available and the mandate of the statute, *i.e.,* the "public policy," has been satisfied regardless of how many policies are owned by the insured or how many vehicles are insured by the policy. (Emphasis in original.)

*Id.,* 122 S.W.3d at 49–50, Cooper, dissenting.

The phrase "upon the request of a reparations insured" is subject to but one interpretation, and it has not gone unnoticed that Cain has not addressed it in her written argument. The record reveals that Cain *did not* request the lesser of $40,000.00 or $80,000.00 in added reparation benefits. Rather, the policy documents of record show that Cain selected Personal Injury Protection (representing basic reparation benefits plus added reparation benefits) in the amount of "$30,-000.00 Aggregate." Since the basic reparation benefits portion of Person Injury Protection is fixed at $10,000.00 by operation of KRS Chapter 304, Cain's added reparation benefit is $20,000.00. The concept of "stacking" allows Cain to recover $20,000.00 in added reparation benefits per vehicle, for a total of $60,000.00. *See Stevenson ex rel. Stevenson v. Anthem Casualty Insurance Group,* 15 S.W.3d 720, 721 (Ky.1999). When this amount is added to the $10,000.00 in basic reparation benefits, Cain was entitled to total benefits in the amount of $70,000.00. American Commerce paid to Cain the sum of $70,000.00 prior to litigation. Accordingly, we find no error on this issue.

In a related argument, Cain claims that the insurance contract issued by American Commerce is violative of KRS 304.39–140 because it does not provide added reparation benefits to Cain in an amount which is the lesser of $40,000.00 or the limit of security provided for liability to any one (1) person in excess of the requirements of KRS 304.39–110(1)(a) (in this case $80,000.00). Having noted above the dispositive language requiring American Commerce to provide this additional level of coverage "upon the request of a reparations insured," and having further determined that Cain did not request the coverage, we cannot conclude that the trial court erred ruling that Cain was not entitled to relief under the Kentucky Unfair Settlement Practice Act or a common law bad faith claim. Similarly, Cain is not entitled to interest on the purported overdue payments nor reasonable attorney fees, as American Commerce paid in a reasonable time all benefits to which Cain was entitled.

For the foregoing reasons, we affirm the Declaratory and Final Judgment of the Jefferson Circuit Court.

ALL CONCUR.